Matthew Singer
Jessica M. Brown
Holland & Knight LLP
420 L Street, Suite 400
Anchorage, AK 99501
Tel: (907) 263-6300
Fax: (907) 263-6345

Gregory S. Fisher
Davis Wright Tremaine LLP
188 West Northern Lights Blvd, Suite 1100
Anchorage, AK 99503
Tel: (907) 257-5335
Fax: (907) 257-5399

*Attorneys for Appellant*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| ANCHORAGE SCHOOL DISTRICT, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| M.G., and his parents Betsy and Brian G., | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | Case No. 3:17-cv-00157-SLG |

**APPELLANT'S MEMORANDUM IN SUPPORT**

**OF MOTION FOR SUMMARY JUDGMENT**

**HOLLAND &
KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

#53929989_v7

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................1

II. STATEMENT OF THE ISSUES..............................................................2

III. STANDARD OF REVIEW .........................................................................3

IV. FACTS ........................................................................................................4

    A. M.G.'s Visual Learning Informs His Last Completed ESER from January 2014. .......5

    B. M.G.'s Difficult Transition to West High School Informs His Last Completed IEP in April 2015.......................................................................................5

    C. M.G.'s Eye Poking and Tantrums Continue, His Ophthalmologist Fails to Diagnose His Condition Until August 2015; the Diagnosis is Incorrect. .........................................6

    D. M.G.'s Mother Informs the School District of Dr. Arnold's Diagnosis, Victoria Ackerman Commences a Functional Vision Assessment of M.G., Communicates Regularly with Parents, and Prepares to Deliver Her Assessment Results. .................7

    E. M.G.'s Mother Contacts Perkins School for the Blind Immediately After Dr. Arnold's August 2015 Diagnosis and Commences the Process of Enrolling M.G. at Perkins. .......................................................................................9

    F. DLC, On Behalf of Parents, Contacts ASD to Request an Independent Educational Evaluation at ASD Expense, and Falsely Informs ASD that Parents are Not Seeking a Residential Placement at Perkins; ASD Agrees to Pay for the IEE.........................10

    G. The IEP Team Waits for the Perkins IEE to Complete M.G.'s IEP; DLC Draws Out the Meetings then Unilaterally Insists the IEP Team Change M.G.'s Placement to Residential; M.G. Has No Current ESER or IEP. .....................................11

    H. Mother Confirms with Perkins Admissions Director that Parents Will Proceed to Make Plans to Place M.G. at Perkins in the Fall of 2016. .............................14

    I. The District Tries to Work with Parents to Complete M.G.'s IEP and ESER, Parents Agree to Work to Update the IEP and ESER Over the Summer. ...............15

    J. Parents Insist that the District Select Perkins as M.G.'s Residential Location, the District Undertakes its Due Diligence Assessment of Perkins, Mother Writes to Perkins that "Placement at Perkins Has Been Agreed To.".........................................15

    K. The District Learns that Perkins is Not Medicaid Eligible and thus Has No Medicaid Oversight.....................................................................................16

    L. At the End of Summer 2016, Parents Refuse to Participate in Updating M.G.'s 2016 Draft IEP and 2014 ESER...........................................................17

    M. The District Issues a PWN to Parents Outlining Its Objections to Perkins. ............17

**HOLLAND & KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

i

N.      The District Extends Offers of Interim or Alternative Educational Placements to M.G.'s Parents, M.G.'s Parents Reject Every Offer. ...................................................... 18

O.      Parents Issue to the District a 10-Day Notice of Withdrawal of M.G. and Unilateral Placement at Perkins. ............................................................................................ 19

P.      The District, Thinking that M.G. Would Leave Anchorage in a Number of Days, Seeks to Evaluate M.G. to Complete His ESER and the Present Levels Portion of His IEP. ........................................................................................................................ 19

Q.      Following Five Hours of Evaluation, Parents Refuse the District's Repeated Requests to Finish its Evaluations of M.G.; This Refusal on the Part of Parents Continues to the Present Day. ...................................................................................... 20

R.      The District Investigates Twenty-Five Residential Programs and Extends Four Placement Offers, Parents Reject Every Offer. ................................................................ 21

S.      Parents File For Due Process. .................................................................................... 21

T.      The Hearing Officer Issues a Series of Erroneous Pre-Trial Orders. ......................... 21

        1.      The Hearing Officer Erroneously Denies ASD's Motion to Continue Evaluations. ...................................................................................................... 21

        2.      The Hearing Officer Prejudices ASD's Defense and Grants Parents' *Motion in Limine* Excluding Jennifer White's Reports and Conclusions. ................... 22

V.      PROCEDURAL HISTORY .................................................................................................. 22

VI.     ARGUMENT ...................................................................................................................... 23

        A.      The Hearing Officer Erred When She Concluded That ASD Failed to Implement M.G.'s May 2016 Draft IEP in a Timely Manner. ....................................................... 24

                1.      A Draft IEP that Fails to Include a Statement of Present Level Functioning and the Selection of Placement Cannot Serve as a Final IEP. ....................... 25

                2.      A Prior Written Notice Cannot Serve as a Final IEP. ................................... 26

                3.      Parents' Non-Cooperation Precluded Finalization or Implementation of an IEP. ................................................................................................................ 28

        B.      The Hearing Officer Erred by Barring ASD from Updating M.G.'s ESER and IEP with Present-Level Baseline Data to Determine His Current Adaptive and Behavioral Needs. .................................................................................................................... 30

                1.      The Hearing Officer Erroneously Denied ASD's Pre-Trial Motion to Continue Evaluations on the Basis That ASD's Evaluations Will Delay M.G.'s Confirmed May 1, 2017 Start Date at Perkins. ................................... 33

                2.      Events Subsequent to the Due Process Hearing Confirm that ASD Has Been Denied the Opportunity to Evaluate M.G. for Years. ................................... 36

HOLLAND &
KNIGHT LLP
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

C.      The Hearing Officer Erred When She Prevented ASD from Presenting Expert Testimony that It Could Provide for M.G.'s Educational Needs in an Individually-Designed In-District Placement. .................................................................... 39

        1.      Ms. White Predicts that M.G. Will Regress and Engage in Self-Injurious Behaviors If Placed in Residential Private School, She is Correct. ................. 42

        2.      Ms. White Concludes that Residential Private School Will Not Serve M.G.'s Educational Needs Given the Difficulty with Transition, She is Correct. .... 42

D.      Post-Hearing, Parents and Perkins Refuse ASD Access to M.G. and Refuse to Cooperate with the Hearing Officer's Order. ................................................. 43

E.      The Hearing Officer Erred When She Framed the Issue to be Decided at the Hearing as "Is Perkins An Appropriate Placement?" as Opposed to Reviewing Applicable Case Law When Parents Make a Unilateral Placement. ........................... 45

        1.      The Hearing Officer Failed to Analyze Prong I of *Burlington/Carter*. ............. 47

        2.      The Hearing Officer Failed to Analyze Prong II of *Burlington/Carter*. ........... 48

        3.      The Hearing Officer Failed to Analyze Prong III of *Burlington/Carter*. ......... 48

        4.      The Effect of Stay Put on This Case. ................................................................ 50

VII.    CONCLUSION ................................................................................................................ 50

**HOLLAND &
KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 4 of 59

**TABLE OF CASES**

*A.K. ex rel. J.K. v. Alexandria City Sch. Bd.*,
    484 F.3d 672, 680 (4th Cir. 2007) ............................................................................25, 26, 28

*Amanda J. ex rel. Annette J. v. Clark Cty. Sch. Dist.*,
    267 F.3d 877 (9th Cir. 2001) .................................................................................................. 3

*Anchorage Sch. Dist. v. M.P.*,
    689 F.3d 1047 (9th Cir. 2012) .............................................................................................. 17

*Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*,
    458 U.S. 176 (1982) .............................................................................3, 25, 45, 46, 48

*C.B. ex rel. Baquerizo v. Garden Grove Unified Sch. Dist.*,
    635 F.3d 1155 (9th Cir. 2011) .........................................................................................47, 50

*C.L. v. Scarsdale Union Free Sch. Dist.*,
    744 F.3d 826 (2d Cir. 2014) ............................................................................................47, 49

*Capistrano Unified Sch. Dist. v. Wartenberg By & Through Wartenberg*,
    59 F.3d 884 (9th Cir. 1995) ............................................................................................... 3, 4

*Carmel Cent. Sch. Dist. v. V.P. ex rel. G.P.*,
    373 F. Supp. 2d 402 (S.D.N.Y. 2005),
    *aff'd sub nom. Carmel Cent. Sch. Dist. v. V.P.*, 192 F. App'x 62 (2d Cir. 2006) ...............46, 47, 48

*Catlin v. Sobol*,
    988 F. Supp. 85 (N.D.N.Y. 1997) ....................................................................................... 49

*Dep't of Educ., State of Haw. v. M.F. ex rel. R.F.*,
    840 F. Supp. 2d 1214 (D. Haw. 2011) ................................................................................. 32

*Doug C. v. Hawaii Dep't of Educ.*,
    720 F.3d 1038 (9th Cir. 2013) .............................................................................................. 46

*Durkee v. Livonia Cent. Sch. Dist.*,
    487 F. Supp. 2d 313 (W.D.N.Y. 2007) ................................................................................ 31

*Fitzgerald v. Camdenton R-III Sch. Dist.*,
    439 F.3d 773 (8th Cir. 2006) ................................................................................................ 31

*Florence Cnty. Sch. Dist. Four v. Carter*,
    510 U.S. 7 (1993) ...........................................................................................................45, 46

*Forest Grove Sch. Dist. v. T.A.*,
    557 U.S. 230 (2009) ........................................................................................................46, 48

**HOLLAND &
KNIGHT LLP**

420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

*Glendale Unified Sch. Dist. v. Almasi,*
    122 F. Supp. 2d 1093 (C.D. Cal. 2000) .................................................................. 40

*Great Valley Sch. Dist. v. Douglas M.,*
    807 A.2d 315 (Pa. Commw. Ct. 2002)............................................................. 30, 39

*Gregory K. v. Longview Sch. Dist.,*
    811 F.2d 1307 (9th Cir. 1987).................................................................. 3, 30, 31

*Honig v. Doe,*
    484 U.S. 305 (1988) .................................................................................... 25

*J.K. v. Missoula County Pub. Sch.,*
    2016 WL 4082633 (D. Mont. July 29, 2016) ..................................................... 1

*J.P. ex rel. D.P. v. New York City Dep't of Educ.,*
    2012 WL 359977 (E.D.N.Y. Feb. 2, 2012) ................................................. 47, 49

*J.W. v. Fresno Unified Sch. Dist.,*
    626 F.3d 431 (9th Cir. 2010)........................................................................ 4

*Jackson v. Chicago Pub. Sch., No. 15 C 6990,*
    2017 WL 2559036 (N.D. Ill. June 13, 2017)............................................... 28, 30

*Johnson by Johnson v. Duneland Sch. Corp.,*
    92 F.3d 554 (7th Cir. 1996) ........................................................................ 30

*K.D. ex rel. C.L. v. Dep't of Educ., Hawaii,*
    665 F.3d 1110 (9th Cir. 2011)...................................................................... 29

*K.S. ex rel. P.S. v. Fremont Unified Sch. Dist.,*
    679 F. Supp. 2d 1046 (N.D. Cal. 2009),
    *aff'd sub nom. K.S. v. Fremont Unified Sch. Dist.,* 426 F. App'x 536 (9th Cir. 2011) .................... 40

*L.K. v. Bd. of Educ.,*
    113 F. Supp. 2d 856 (W.D.N.C. 2000) ......................................................... 49

*M. v. Falmouth Sch. Dep't,*
    847 F.3d 19 (1st Cir. 2017), *cert. denied sub nom. Ms. M. v. Falmouth Sch. Dep't,*
    No. 16-1440, 2017 WL 2423910 (U.S. Oct. 2, 2017) ..................................... 27

*M.C. v. Voluntown Bd. of Educ.,*
    226 F.3d 60, 66 (2d Cir. 2000).................................................................... 46

*M.N. v. Hawaii,*
    2013 WL 601816 (9th Cir. 2013)................................................................. 37

**HOLLAND &**
**KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

v

*Marc M. ex rel. Aidan M. v. Dep't of Educ., Hawaii,*
    762 F. Supp. 2d 1235 (D. Haw. 2011) ................................................. 4

*Matthews by Matthews v. Davis,*
    742 F.2d 825 (4th Cir. 1984) ........................................................... 49

*MM ex rel. DM v. Sch. Dist. of Greenville Cty.,*
    303 F.3d 523 (4th Cir. 2002) ........................................................... 47

*Ms. M. v. Portland Sch. Comm.,*
    360 F.3d 267 (1st Cir. 2004) ........................................................... 32

*Murphy v. Town of Wallingford,*
    No. 3:10-CV-278 CFD, 2011 WL 1106234 (D. Conn. Mar. 23, 2011) ................. 30

*Ojai Unified Sch. Dist. v. Jackson,*
    4 F.3d 1467 (9th Cir. 1993) ............................................................. 3

*P.S. v. Brookfield Bd. of Educ.,*
    353 F. Supp. 2d 306 (D. Conn.), *aff'd sub nom.*
    *P.S. ex rel. J.S. v. Brookfield Bd. of Educ.,* 186 F. App'x 79 (2d Cir. 2006) ............ 30

*Patricia P. v. Bd. of Educ. of Oak Park,*
    203 F.3d 462 (7th Cir. 2000) ..................................................... 30, 31, 49

*R.L. v. Miami-Dade Cty. Sch. Bd.,*
    757 F.3d 1173 (11th Cir. 2014) ......................................................... 47

*Ravenswood City Sch. Dist. v. J.S.,*
    870 F. Supp. 780 (N.D. Cal. 2012) ............................................... 13, 25, 28

*San Rafael Elementary Sch. Dist. v. California Special Educ. Hearing Office,*
    482 F. Supp. 2d 1152, (N.D. Cal. 2007) ................................................ 49

*Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.,*
    471 U.S. 359 (1985) ........................................................ 25, 45, 46, 50

*Schaffer ex rel. Schaffer v. Weast,*
    546 U.S. 49 (2005) ................................................................. 11, 46

*Schoenfeld v. Parkway Sch. Dist.,*
    138 F.3d 379 (7th Cir. 1998) ........................................................... 49

*Settlegood v. Portland Pub. Schs.,*
    371 F.3d 503 (9th Cir. 2004) ....................................................... 13, 25

*Shelby ex rel. Kathleen T v. Conroe Indep. Sch. Dist.,*
    454 F.3d 450, 454 (5th Cir. 2006) ...................................................... 31

**HOLLAND &**
**KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

vi

*Smith v. D.C.*,
　2014 WL 1425737 (D.D.C. Mar. 14, 2014) ................................................................ 40

*T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*,
　752 F.3d 145 (2d Cir. 2014) ........................................................................................ 48

*Thies v. New York City Bd. of Educ.*,
　2008 WL 344728 (S.D.N.Y. Feb. 4, 2008) ........................................................... 47, 49

*Tucker v. Calloway County Bd. of Educ.*,
　136 F.3d 495 (6th Cir. 1998) ...................................................................................... 49

*White ex rel. White v. Ascension Par. Sch. Bd.*,
　343 F.3d 373 (5th Cir. 2003) ...................................................................................... 14

*Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*,
　550 U.S. 516 (2007) .................................................................................................... 29

**HOLLAND &**
**KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

vii

# I.    INTRODUCTION

This case arises out of a heartbreaking diagnosis of M.G.'s progressive blindness.  Anchorage School District (ASD or the District) is and has always been committed to providing M.G. with individualized special education services to meet his needs.  Unfortunately, the standard process for developing and delivering special education services via a student's individualized education plan (IEP) was disrupted by parents and Disability Law Center's singular focus on a unilateral placement for M.G. at the Perkins School for the Blind (Perkins).  The Hearing Officer adopted this exclusive focus, ignored applicable law, and repeatedly violated ASD's rights to a fair hearing by:  (1) failing to consider the parents' refusal to cooperate in completion of an IEP to inform M.G.'s placement; (2) barring necessary evaluations; (3) refusing to admit key testimony; and (4) failing to consider an entire body of case law that applies to a parent's choice to unilaterally place a child in an alternative educational placement during the pendency of a due process proceeding.

The Hearing Officer's order is deficient because it does not contain detailed findings and does not apply the facts to the law.  A lengthy due process hearing would normally result in detailed findings of fact and conclusions of law,[1] but the order in this case contains few references to a 6,000 page record and contains no clear findings of law.  As detailed below, the order is rife with factual and legal errors. These errors have real world consequences. This is the most expensive private school placement in ASD history:  $236,896.98 in tuition for just 168 days of instruction.  [R 1771-72]

Subsequent to M.G.'s placement, Perkins has been openly adversarial and non-cooperative with ASD, has ignored the Hearing Officer's order, and has arbitrarily thwarted ASD's carefully-planned and coordinated efforts to comply with that order to evaluate M.G. and implement his

---

[1]    *See e.g. J.K. v. Missoula County Pub. Sch.*, 2016 WL 4082633, at *2 (D. Mont. July 29, 2016) ("The Hearing Officer's 60-page decision includes 30 pages of findings of fact and presents a thorough and accurate factual background as well as a detailed analysis supporting his conclusions.")

**HOLLAND &**
**KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK  99501
Phone:  (907) 263-6300
Fax:  (907) 263-6345

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT          PAGE 1
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*          CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 9 of 59

IEP.[2] Parents continue a multi-year effort to prevent ASD from interacting with M.G. or evaluating his needs, in direct violation of the Individuals with Disabilities Education Act's (IDEA) requirement of parental cooperation.

ASD respectfully requests that this Court correct the errors in the Hearing Officer's order that led to this current calamitous and seemingly intractable situation. ASD requests that this Court conclude that ASD did offer to provide a free appropriate public education (FAPE) to M.G., that parents' unilateral placement at Perkins was unjustified, that ASD is not responsible for further tuition reimbursement, and that M.G.'s continued entitlement to special education services from ASD depends on parents cooperating to make him available for evaluation and completion of an IEP.

## II. STATEMENT OF THE ISSUES

ASD advances four principle errors for this Court's consideration:

(1) Did the Hearing Officer err when she concluded that ASD failed to implement M.G.'s IEP in a timely manner, where M.G. did not have a current or complete IEP due to the parents' refusal to participate in ASD's substantial efforts to update this document?

(2) Did the Hearing Officer err when she required ASD to reimburse parents for the total cost of Perkins, where parents denied ASD access to evaluate M.G., who was experiencing progressive blindness, so that ASD could inform M.G.'s Evaluation Summary Eligibility Report (ESER) and IEP with present-level baseline data to determine his current adaptive and behavioral needs?

(3) Did the Hearing Officer err when she prevented ASD from presenting expert testimony that it could provide for M.G.'s educational needs in an individually-designed, in-district placement, housed in a pre-existing program?

**HOLLAND & KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

---

[2] Gregory Fisher, co-counsel for the Anchorage School District, is responsible for those sections of this brief that refer to Perkins School for the Blind and will be available at oral argument to address any matters regarding Perkins.

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT          PAGE 2
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*          CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 10 of 59

(4)    Did the Hearing Officer err when she framed the issue to be decided at the hearing as "Is Perkins an appropriate placement?" as opposed to applying controlling case law and appropriate scrutiny to parents' unilateral placement?

## III.    STANDARD OF REVIEW

Under the IDEA, federal courts reviewing state administrative proceedings are to "receive the records of the administrative proceedings;" "hear additional evidence at the request of a party;" and "grant such relief as the court determines is appropriate" based on a preponderance of the evidence.[3] Thus, Congress intended "judicial review in IDEA cases [to] differ[] substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review."[4]

"Complete de novo review, however, is inappropriate."[5] Rather, this Court must defer to a state administrative officer's "specialized knowledge and experience" by giving "due weight" to her decisions.[6] The Ninth Circuit has directed that "[h]ow much deference to give state educational agencies … is a matter for the discretion of the courts."[7] District courts are to consider the hearing officer's findings "carefully and endeavor to respond to the hearing officer's resolution of each material issue," but the court "is free to accept or reject the findings in part or in whole."[8]

Thus, when exercising its discretion to determine what weight to give the hearing officer's findings, one criterion courts "have found useful is to examine the thoroughness of those findings.

---

[3]    20 U.S.C. § 1415(i)(2)(C).
[4]    *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471 (9th Cir. 1993).
[5]    *Amanda J. ex rel. Annette J. v. Clark Cty. Sch. Dist.*, 267 F.3d 877, 887 (9th Cir. 2001) (citation omitted).
[6]    *Id.* at 888 (citing *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 206-08 (1982) ("*Rowley*")).
[7]    *Capistrano Unified Sch. Dist. v. Wartenberg By & Through Wartenberg*, 59 F.3d 884, 891 (9th Cir. 1995) (quoting *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987)).
[8]    *Id.* (citation omitted).

**HOLLAND &
KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax:  (907) 263-6345

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                PAGE 3
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*        CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 11 of 59

The amount of deference accorded the hearing officer's findings increases where they are 'thorough and careful.'"[9]

The Hearing Officer's order contains just twenty references to a 6,000 page record produced over a ten-day hearing. The order fails to provide a single legal citation to support its analysis or reasoning. The first version of the order incorporated an "Appendix" that contained the Hearing Officer's handwritten edits and deletions. The Hearing Officer's findings are not careful and not indicative of reasoned judicial decision-making, and therefore her order is entitled to little deference.[10]

## IV. FACTS[11]

M.G. is an eighteen-year-old who experiences severe nonverbal autism spectrum disorder and a moderate to severe intellectual disability. [R 1852-60] He was first diagnosed with autism when he was two-and-a-half years old. [R 3972] He also suffers from gastrointestinal problems, which began when he was enrolled in elementary school. [R 3984-85] In third grade, his discomfort and constipation resulted in his grabbing at himself and others, hitting walls, screaming in pain, and being unable to sleep. [R 3889-90] Ultimately, M.G. was diagnosed with several food allergies. [*Id.*] Despite significant dietary restrictions and medication management, M.G. continues to have "flare ups," especially at night. M.G.'s agitation began in elementary school, and his screaming, grabbing, and hitting has become "more magnified" due to his age, size, and strength. [R 3996-97]

---

9 *Id.* (citation omitted); *J.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 441 (9th Cir. 2010) (concluding that a hearing officer explains her legal conclusions thoroughly where she "include[es] citations to the relevant facts and the discussion of the applicable law").

10 *See, e.g., Marc M. ex rel. Aidan M. v. Dep't of Educ., Hawaii*, 762 F. Supp. 2d 1235, 1242 (D. Haw. 2011) ("[The Hearing Officer's] conclusions of law are sparse and cursory in nature. For instance, the Hearing Officer concluded in one sentence that Defendant conducted an evaluation … without citing to the record… nearly all of the Hearings Officer's conclusions of law are conclusory in nature and the Officer rarely cited to facts on the record to support his conclusions … The Court will therefore grant the decision little deference.").

11 ASD refers to the record provided by DEED to this Court as "R." It refers to the supplemental documents it lodged with the Court under seal at Dkt. Nos. 46-49 as "AR."

**HOLLAND & KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

## A. M.G.'s Visual Learning Informs His Last Completed ESER from January 2014.

From a young age, M.G. responded well to visual schedules and the repetition of visually-modeled actions. [R 3983] In elementary school, M.G. was introduced to the Dynavox, a device that generates speech based on the selection of different pictures and enabled M.G. to communicate with those around him. [R 4000, 4003]

M.G.'s last completed ESER at the time of the underlying due process hearing was a reevaluation ESER completed following an ESER team meeting on January 21, 2014.[12] [R 269-96] His ESER confirmed his eligibility for special education under the category of autism, but noted that "more information is needed before developing the [IEP]." [R 269, 274] His ESER confirmed that M.G. "does well with repetition," but "does not seem to generalize" well between home and school. [R 269, 294]

## B. M.G.'s Difficult Transition to West High School Informs His Last Completed IEP in April 2015.

Transitioning from middle school to high school was difficult for M.G. [R 2287] He becomes agitated when his routines are disrupted. [R 4036, 3981, 4046-47, 274, 294] On March 24, 2015, the District conducted a routine distance vision screening test as part of a general Student Health Profile Report, which M.G. failed for both of his eyes, suggesting that M.G. was near sighted. [R 2282, 4033] Also in March, according to parents, M.G. started poking his eye with his finger. [R 4029-30] Parents initially thought M.G. might have a headache, but the behavior progressively worsened. M.G. continuously threw tantrums during this period "screeching, screaming, kind of banging on walls … poking his eye, banging on his head." [R 4030, 4042] While parents were not notified about the ASD

**HOLLAND &
KNIGHT LLP**

420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

---

[12]     Pursuant to the IDEA, every student must be evaluated for special education services, 34 C.F.R. § 300.306, and reevaluated every three years, or in the event of a change in diagnosis or needs. 34 C.F.R. § 300.303. In Alaska, this evaluation and reevaluation process is formalized in the ESER. 4 AAC 52.125; 4 AAC 52.180.

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                     PAGE 5
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*          CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 13 of 59

vision screening, they independently obtained a visual exam at around the same time. In late March or early April 2015, parents took M.G. to see Dr. Arnold, a local pediatric ophthalmologist. [R 4032] Dr. Arnold did not find anything wrong at that time. [*Id.*]

On April 16, 2015, M.G.'s IEP Team met for their annual review of his IEP. The IEP contains numerous references to M.G.'s need for visual supports, such as his Dynavox. [R 2288] M.G.'s parents provided comments, including that M.G. had "experienced significant regression this fall." Parents noted that M.G. experienced a "GI flare-up" during this period. Parents closed their comments with the following statements:

> We have been impressed with the West High staff who work with [M.G.]. They have been very supportive and helpful of his needs. We appreciate all of their hard work and support, particularly during what has turned out to be a difficult transition for [him]. [R 2289]

## C. M.G.'s Eye Poking and Tantrums Continue, His Ophthalmologist Fails to Diagnose His Condition Until August 2015; the Diagnosis is Incorrect.

Following the April 2015 IEP team meeting, M.G.'s eye poking, head banging, general agitation, and tantrums continued. [R 4030-31] In a letter dated June 3, 2015, M.G.'s pediatrician noted that, "[i]n the past 3 months, [M.G.'s] behavior has deteriorated badly. … His violent and aggressive behaviors endanger him and also endanger others including family members and caretakers." [R 2003] M.G.'s mother described that "M.G.'s aggression and violence increased to a level I have never seen … And he was just so violent. … I had cuts on my arms … he was hitting walls. He was breaking pictures." [R 4034-35] She considered M.G. "in danger of institutionalization" because of his behavior. [R 4038]

That summer, M.G.'s parents declined the extended school year (ESY) services provided by the District, and instead sent M.G. to a summer camp for children with disabilities. [R 4021-22] While M.G. was at camp in July 2015 his parents started receiving reports from his camp providers that he was running into things. [R 4043]

**HOLLAND &
KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT     PAGE 6
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*     CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG    Document 58    Filed 11/06/17    Page 14 of 59

In mid-July 2015 M.G.'s parents brought him back to Dr. Arnold, who diagnosed M.G. with an eye infection. [R 4043] Dr. Arnold prescribed eye drops and prepared some glasses to help M.G. focus better, which "seemed to help." [*Id.*; R 1935] Dr. Arnold saw M.G. on August 3, 2015 for a follow-up exam, and according to M.G.'s mother "was able to tell that M.G. had peripheral vision loss" and suspected, and told M.G.'s parents, that M.G. had retinitis pigmentosa—a very slow degenerative disease that affects peripheral vision and leads to total blindness. [R 4049; 5413; 1935; 2006]

On August 19, 2015, M.G.'s parents brought him back to Dr. Arnold, [R 1935] whose chart noted: "[Patient] 'still not seeing.' This seems variable depending on environment, better at home perhaps." He recommended that M.G. "should be seen by medical-genetic-retina [specialist] in Portland Dr. Richard Welaber. School needs paperwork." [R 2005] The possibility of retinitis pigmentosa was understandably devastating for M.G.'s parents. M.G. was a visual learner and relied almost entirely on his vision to communicate with others. [R 4049-50] Dr. Arnold ultimately referred M.G. to a specialist in Denver to undertake an evaluation. [R 4051; 1936]

### D. M.G.'s Mother Informs the School District of Dr. Arnold's Diagnosis, Victoria Ackerman Commences a Functional Vision Assessment of M.G., Communicates Regularly with Parents, and Prepares to Deliver Her Assessment Results.

As the school year started, M.G.'s parents informed the District that M.G. had been diagnosed with vision loss. M.G.'s mother contacted Jose Pabon, a blind and visually impaired (BVI) teacher with the District. On August 20, 2015, M.G.'s mother faxed Mr. Pabon the chart note from Dr. Arnold and asked via e-mail if Mr. Pabon needed anything else from Dr. Arnold "in order to move forward with getting vision support services in place." [R 2359, 4061] That same day, Mr. Pabon informed Victoria Ackerman, the BVI teacher at West High, and Kaleb Kuehn, M.G.'s special education teacher, that Ms. Ackerman would need a referral from Mr. Kuehn or the school and a "permission to test/evaluate with the vision portion checked" and the District would "need that

**HOLLAND &
KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    PAGE 7
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*         CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 15 of 59

permission signed by [M.G.'s] parents and then [the District] can assess." [R 2359] Ms. Ackerman noted that, while Dr. Arnold's chart note did not have a diagnosis, M.G.'s father, who also worked at West High School, informed her that M.G. "possibly" had retinitis pigmentosa. [R 5413; *see also* R. 1935-36 (mother letter to Perkins, "Dr. Arnold thinks [M.G.] has Retinitis Pigmentosa … [need] definitive diagnosis[.]")] Ms. Ackerman informed father that her "focus would be [to] teach [M.G.] basic cane skills to detect elevation changes." [R 2374] As explained by Mr. Pabon, it was advisable for Ms. Ackerman to commence with providing cane skills to M.G., as "safety [is] a paramount concern" for students experiencing a loss of vision, as they must first learn how to travel safely between environments so that the students do not injure themselves. [R 5204]

On August 24, 2015, Ms. Ackerman commenced a functional vision assessment (FVA) of M.G. [R 5441-42, 5421-22] Although she did not receive formal written consent from M.G.'s parents,[13] [R 5422] she was in regular contact with M.G.'s mother and M.G.'s father. [R 2337-42, 2350, 2374, 5429] According to M.G.'s mother, Ms. Ackerman informed her that "she [Ms. Ackerman] had never seen a case of [retinitis pigmentosa] like this and that she ha[d] seen rapid decline in [M.G.'s] vision since she started working with him [just a few weeks prior]." [R 2025] Ms. Ackerman also observed to M.G.'s mother that "[M.G.]'s right vision [was] significantly worse than his left vision, and he has almost nothing left in his right eye." [*Id.*] M.G.'s mother wrote to Ms. Ackerman during the months of September and October 2015 acknowledging Ms. Ackerman's observations, thanking her for "taking the time to talk," stating that she "appreciat[ed Ms. Ackerman] working with M.G. on the use of the cane," and noting that "[M.G.] will continue to need training with the cane." [R 2337-42]

Because an FVA is observation-based across multiple settings with the same student, Ms.

**HOLLAND & KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

---

13    The District offered to stipulate at the underlying due process hearing that Ms. Ackerman did not receive the proper parental consents for such an assessment. [R 5436]

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT             PAGE 8
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*             CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 16 of 59

Ackerman continued with her assessments during the fall. [R 5421, 5601-02] Additionally, she provided services to M.G. in the areas of orientation and mobility, as well as designing adaptations and accommodations for his vision. [R 5425] She was prepared to offer her conclusions to the FVA to M.G.'s parents and M.G.'s IEP team on January 15, 2016. [R 5443] M.G.'s mother wrote to Ms. Ackerman on January 20, 2016, stating, "[w]e have our annual IEP review coming up in April, so it seems like we will all be meeting then anyway." [R 2346]

Ms. Ackerman requested that parents set up a time to talk, [R 2348] but did not hear anything back on her request until she was informed that parents had retained Disability Law Center, who requested all educational records for M.G. in January 2016. [R 2350, 5443-44, 2394-95] Ms. Ackerman was also not provided the conclusive diagnosis of M.G.'s vision condition from Denver Children's Hospital until the first IEP team meeting in April 2016. [R 5413-14, 2353]

### E. M.G.'s Mother Contacts Perkins School for the Blind Immediately After Dr. Arnold's August 2015 Diagnosis and Commences the Process of Enrolling M.G. at Perkins.

Without the District's knowledge, M.G.'s mother first contacted Perkins School for the Blind inquiring about enrollment for M.G. sometime prior to September 2, 2015, [R 1923-24] and completed detailed enrollment paperwork on September 12, 2015. [R 1925-39] In M.G.'s admission paperwork, M.G.'s mother noted that "[M.G.] will be undergoing audiology testing under sedation at Denver Children's Hospital on November 30 [, 2015]." [R 1928] On November 2, 2015, M.G.'s mother wrote to the staff at Perkins, "As discussed, we would like to do the admission visit/evaluation combination for [M.G.] … The best date for us to travel to Boston would be our spring break, the week of March 14 [, 2016]. … Again, we appreciate the committee's consideration of [M.G.] for admission to Perkins." [R 3167] M.G.'s mother also sent to Perkins copies of Ms. Ackerman's orientation and mobility notes from her FVA observations. [R 4088] M.G.'s mother did not inform ASD about her interactions with Perkins.

**HOLLAND &
KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT          PAGE 9
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*          CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 17 of 59

M.G. was evaluated by Dr. Robert Enzenauer at Denver Children's Hospital in December 2015. Dr. Enzenauer determined that "retinal function was not the problem," as Dr. Arnold first surmised, "but rather rapidly progressive optic nerve atrophy." [R 2014] He estimated M.G.'s "visual function to be 20/400 or 20/800 with SEVERE restricted visual field probably less than 10 degrees." [R 2015] Dr. Enzenauer's report was not sent until January 29, 2016. [R 2014]

On January 20, 2016, M.G.'s mother wrote to the staff at Perkins, updating them concerning Dr. Enzenauer's report, and informing them "We have purchased our tickets to Boston and look forward to seeing you in March!" [R 3164]

**F. DLC, On Behalf of Parents, Contacts ASD to Request an Independent Educational Evaluation at ASD Expense, and Falsely Informs ASD that Parents are Not Seeking a Residential Placement at Perkins; ASD Agrees to Pay for the IEE.**

On January 28, 2016, Anne Applegate, an attorney with Disability Law Center of Alaska, sent a letter to Cindy Anderson, ASD's Executive Director of Special Education, requesting that ASD pay for an independent educational evaluation (IEE) at Perkins School for the Blind. [R 104-07] Ms. Applegate did not disclose that Parents had already completed enrollment paperwork and that the purpose of the trip was to explore enrollment. Instead, Ms. Applegate misleadingly stated to Ms. Anderson "that this was not going to be a residential … placement." [R 4755-56] According to Ms. Applegate: "the parents wanted their son in the community, in Anchorage, but they wanted a really solid strong evaluation of the student … so that they could really look at what kinds of services and supports would be most cost effective to serve him as his vision declined." [*Id.*]

On January 29, 2016, Ms. Anderson sent a letter to M.G.'s parents, informing them that the District was "willing to forego established IEE procedures and grant [the parents] request." [R 2397] Ms. Anderson later explained: "if [Ms. Applegate] had come to me and said … the parents intend to place the child in a residential setting I would have followed our normal process" [R 4765] which, according to Ms. Anderson, "would be that our District would do a full evaluation of the student. We

**HOLLAND &
KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                      PAGE 10
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*          CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 18 of 59

would have had an eligibility meeting and ma[de] a determination and then if parents disagreed with the evaluation we would -- the parents could request an IEE[.]"[14]  [R 4766]  Ms. Anderson expected that, as the District was "paying for the IEE," it would be used in the IEP process "in looking at what [M.G.]'s needs were and … writing a strong IEP for him in terms of goals and objectives and services." [R 4769]

In March 2016, M.G. and his parents travelled to Perkins to participate in the District funded IEE.  [R 2437]  Without informing the District, M.G.'s parents completed a pre-admission visit while at Perkins.  [R 3153, 3279, 2699]  In late March 2016 and early April 2016, M.G.'s parents and the Perkins staff discussed M.G.'s admission to Perkins, [R 3147-54] and on April 8, 2016, M.G.'s mother informed the Perkins staff:  "We appreciate all the information/thoughts you shared regarding [M.G.]'s evaluation and admission to Perkins … I am back in Alaska and moving forward on the funding piece."  [R 3147]

### G. The IEP Team Waits for the Perkins IEE to Complete M.G.'s IEP; DLC Draws Out the Meetings then Unilaterally Insists the IEP Team Change M.G.'s Placement to Residential; M.G. Has No Current ESER or IEP.

Following the March evaluations by Perkins, Ms. Applegate informed Ms. Anderson that M.G.'s District-based IEP team should anticipate receiving a comprehensive evaluation report from Perkins with recommendations within 7-8 weeks.  [R 3314]  Based on this estimate, ASD expected to have the report by early May.  [R 4768]  Ms. Applegate requested to meet earlier in April without the benefit of the Perkins report.  [R 944]  On April 28, 2016, M.G.'s IEP team convened to draft an updated IEP for M.G.  [R 2398-99]  In attendance were M.G.'s parents, the special education teacher,

---

**HOLLAND & KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone:  (907) 263-6300
Fax:  (907) 263-6345

[14]      *See Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 60 (2005) (explaining that the IDEA regulations clarify that a "parent has the right to an independent educational evaluation at public expense *if the parent disagrees with an evaluation obtained by the public agency*" (emphasis added) (citing 34 C.F.R. § 300.502(b)(1))); *see also* AS 14.30.191(e) (codifying IDEA regulation on this issue).

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT          PAGE 11
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*          CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 19 of 59

the general education teacher, the District representative, the speech/language pathologist, the occupational therapist, the adaptive physical education teacher, the blind/visually impaired teacher, the department chair, counsel for M.G.'s parents, and counsel for the District. [R 2398]

The team met again on May 11, 2016 and again on May 18, 2016. [R 2400-02] The District representative, Debra Parrish, realized that M.G.'s parents were instructed by Ms. Applegate not to speak in any of the meetings, which she found "not … normal," given her experience. [R 5611] Instead, Ms. Applegate was "hostile towards some of the people that were in the room … for sure the BVI person [Ms. Ackerman] was under attack" to the point that Ms. Parrish had to "actually sp[eak] up for [Ms. Ackerman] because [she] felt like it was not okay to say the things that were being said to [Ms. Ackerman] in the manner that they were being said." [*Id.*] According to Ms. Parrish, the IEP team meetings were "very drawn out" and "[t]ypically in that length of time [a team] would have completed an IEP or two." [*Id.*]

At the second meeting, Ms. Parrish felt that "there was an agenda there that we -- was not being exposed to us, but you could just tell" because while she had "sat in [she] couldn't even count how many IEP meetings in [her] life" there was "something was not -- it was off." [R 5612] Ms. Parrish felt that "there was a -- an alternative agenda and [the District team] just didn't know what it was." [*Id.*] Ms. Ackerman shared that she came prepared to the meetings with models of tactile symbols or cards, and suggestions and explanations of her work with M.G. to date, and she was not permitted to display or explain anything because the team "did not even get through page two" of the IEP. [R 5433] Other providers came prepared with materials, tools, and strategies for what could be done at West High School to provide for M.G.'s educational needs in light of what they knew about his blind/visually impaired diagnosis. [R 5616-19]

By the third IEP meeting, the IEP team still did not have the Perkins evaluations or data with updated baselines to establish M.G.'s present needs and level of functioning. [R 5617-18; 2413] In

**HOLLAND &**
**KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                PAGE 12
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*          CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG    Document 58    Filed 11/06/17    Page 20 of 59

the absence of these critical evaluations informing M.G.'s present status and needs, the team was not able to revise M.G.'s ESER. [R 2413 (narrative of instructions following third box from the top, titled "PRESENT LEVELS OF ACADEMIC ACHIEVEMENT AND FUNCTIONAL PERFORMANCE [Present Levels], Address all identified educational needs from the ESER[.]")] This information is a crucial component required to inform M.G.'s Present Levels of Academic Achievement and Functional Performance (Present Levels) on his IEP.

The IDEA requires that IEPs include a statement of Present Levels.[15] This statement is the foundation upon which the IEP team builds the IEP.[16] In Alaska, an ESER determines a student's eligibility for special education services and is based on current evaluations conducted by trained professionals.[17] Given M.G.'s recent diagnosis of visual impairment, the IEP team needed the Perkins evaluations to inform and complete M.G.'s ESER and to complete the Present Levels section of the IEP. Without the IEE, the team could not make informed decisions to address the degree to which his vision impairment was impacting his access to education. The May 2016 IEP document thus remained in "DRAFT VERSION" form. [R 2412-36]

At the close of the third IEP meeting, Ms. Applegate turned to the District representatives and exclaimed: "well, I'd like to jump ahead and I want to talk about placement, do you guys really feel like you can provide all the needs that [M.G.] has. Like I don't think you can." [R 5614] According to Ms. Parrish, "at that point everybody kind of froze because no one [knew] what to say." [Id.] The District asked for a minute to confer. When Ms. Applegate returned, she continued, "ok well, I'm going to go around the table" to ask all IEP team participants "do you think that [West] is the appropriate placement." [R 5614-15] This was uncomfortable for the District team, as they had

HOLLAND &
KNIGHT LLP
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

---

[15]     34 C.F.R. § 300.320(a)(1); 20 U.S.C. § 1414(d)(1)(A)(i)(l).
[16]     *See* 71 Fed. Reg. 46,662 (2006); *see also Ravenswood City Sch. Dist. v. J.S.*, 870 F. Supp. 780, 790-91 (N.D. Cal. 2012) (quoting *Settlegood v. Portland Pub. Schs.*, 371 F.3d 503, 508 n.1 (9th Cir. 2004)).
[17]     4 AAC 52.125.

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    PAGE 13
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*          CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 21 of 59

come up with numerous teaching tools, methods and suggestions that were completely ignored by parents' counsel. [R 5616-17]

Ms. Ackerman recounted how she "wasn't sure if [residential] was the best placement because of [M.G.]'s age and transitioning back to the community," but she also recalled that "the parents and I didn't have a good working relationship obviously by that time of the process and I thought it was in … [M.G.]'s best interest because of what the parents want[ed]." [R 5433-34] Ms. Parrish responded that she "[felt] like West High -- we had just spent all these hours coming up with all of these things to try to help [M.G.] in our building. I felt like we should give [the District] a try. So I did tell [Ms. Applegate] that I felt like we could provide his educational needs in our building," but she would not stand in the way of the team selecting an alternative placement. [R 5615] Ultimately, the District agreed to issue a prior written notice (PWN) to propose a change to M.G.'s placement to residential treatment, with the location to be administratively determined. [R 2436] The last page of the May 18, 2016 Draft IEP provided: "The nature and severity of [M.G.]'s disability justifies residential placement as the least restrictive environment. The location will be administratively determined."[18] [R 2435] In parents' Post-Hearing Brief they confirmed: "On May 18, 2016 … M.G.'s IEP team met for the third time, but did not complete his IEP." [AR 7026]

### H. Mother Confirms with Perkins Admissions Director that Parents Will Proceed to Make Plans to Place M.G. at Perkins in the Fall of 2016.

The same day of the May 18, 2016 IEP team meeting, M.G.'s mother wrote to Chris

---

[18]     "Administratively determined" refers to the District's ultimate *location* decision. This differs from a child's *placement*. Districts must always formulate an IEP before making a placement decision, as placement determinations must be "based on the child's IEP." 34 C.F.R § 300.116(b)(2); 20 U.S.C. § 1414(d). Parents participate in the placement decision as members of the IEP team. 20 U.S.C. § 1414(d). But the IDEA does not "require parental participation in site selection"—that is, the location where the child receives special education services pursuant to his or her placement. *See White ex rel. White v. Ascension Par. Sch. Bd.*, 343 F.3d 373, 379 (5th Cir. 2003). But in Alaska, unlike most states, "A district must obtain consent of a child's parent before a child may be transferred by the district to a school outside of the district in which the child resides." 4 AAC 52.150(c).

**HOLLAND &**
**KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    PAGE 14
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*       CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 22 of 59

Underwood, the admissions director at Perkins:

> We had a meeting today that makes us very optimistic about funding for residential treatment for [M.G.], prior to even receiving [the] Perkins report. … We are not yet prepared to pronounce this with 100% certainty. … Residential placement approval does not necessarily mean Perkins … However, given that Perkins prepared the reports for the district at their expense and given the limited residential options for a kid with the levels of vision loss and autism that [M.G.] experiences, we think that we have a very good shot at placement at Perkins in the fall. We are going to proceed to make plans with this placement at Perkins in mind[.] [R 3145]

M.G.'s mother did not provide ASD with this communication to Perkins.

**I. The District Tries to Work with Parents to Complete M.G.'s IEP and ESER, Parents Agree to Work to Update the IEP and ESER Over the Summer.**

Recognizing that the IEP could not be completed without an updated ESER drawing from the Perkins report, the District met with parents on June 8, 2016 to discuss the process of updating the IEP, as well as possible residential placements. [R 5475, 6056-57 ¶¶ 4(a), (d), (e)] At the meeting, the District consultant requested (1) that the parties work to administratively update[19] M.G.'s 2014 ESER to include vision impairment, as residential schools, in the consultant's experience, typically required a completed IEP and ESER prior to enrollment, [R 5482, 6057 ¶ 4(c)] and (2) that the District use the Assessment of Basic Language and Learning Skills ("ABLLS") to assess M.G., as this was recommended in the Perkins IEE, to address M.G.'s language and learning skills. [R 5475-76, 6057 ¶ 6] Parents refused to consent to the ABLLS, but agreed to work on an administrative ESER and IEP over the summer. [R 5482-83, 6057-58 ¶¶ 5, 7, 8]

**J. Parents Insist that the District Select Perkins as M.G.'s Residential Location, the District Undertakes its Due Diligence Assessment of Perkins, Mother Writes to Perkins that "Placement at Perkins Has Been Agreed To."**

The District and parents discussed a number of residential schools for the blind during the

---

**HOLLAND & KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

[19] "Administratively update" in this context refers to the practice of continuing special education decision-making and required procedures when the District and parents reach an impasse, but the child's education plan must continue. It is an alternative dispute resolution procedure. [R. 6057 ¶ 4(b); R. 5482-5483]

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    PAGE 15
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*    CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 23 of 59

June 8, 2016 meeting, including Perkins. [R 2438-2501] Parents and parents' counsel represented at that meeting that of the schools they investigated, [R 4486-90] Perkins "was the one that we felt was appropriate." [R 4490] Ms. Anderson observed, "[w]e knew the parents really liked Perkins and seemed to want Perkins," but the District "also [has] an obligation as a District to go back and do our own research and our own review and evaluation of -- of what's available." [R 4779] This evaluation would include determining if the placement is "a viable option with the Department [of Health and Social Services] -- with Medicaid." [*Id.*]

At that time, the District was unaware that tuition at Perkins was roughly $1,410.10 per day. [R 1771-72 (May 2016-February 2017)] Parents were aware of this cost as of April 12, 2016, [R 3146] but when asked for any cost information at the June 8, 2016 meeting, they stated that they did not have that information and they thought it was available online. [R 4207, 4391-92] Ms. Applegate informed District counsel before the June 8, 2016 meeting that she was "committed to diversifying the financial responsibility here. It is both right and in M[.G.]'s interest to work to get contribution from Medicaid and insurance." [R 118, 996]

The day following the June 8, 2016 meeting, M.G.'s mother wrote to Perkins with an update, explaining:

> We met with Anchorage School District personnel yesterday and things are progressing great. We previously received the change in placement to residential and that was confirmed, and placement at Perkins had been agreed to. So we are good to go. … We and now ASD are committed to [M.G.] attending Perkins next year. We are still intending a fall start date. We do still have some more logistical work to do to help coordinate payment. [R 3132]

Again, M.G.'s mother did not provide ASD with this communication.

### K. The District Learns that Perkins is Not Medicaid Eligible and thus Has No Medicaid Oversight.

During a conversation with Perkins after the June 8 meeting, the District learned that Perkins may not be a Medicaid-eligible facility. [R 1080; 4785-86; 118] Once the District learned this information, it scheduled a conference call with the Department of Health and Social Services (DHSS)

**HOLLAND &
KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT          PAGE 16
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*          CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 24 of 59

and parents on August 4, 2016 to determine if there was any way for Perkins to become Medicaid eligible. [R 4823-24; 1141] Shortly thereafter, on August 23, 2016, DHSS issued a letter stating they were unable to contact Mr. Underwood at Perkins despite numerous attempts to discuss Perkins' ability to become a Medicaid provider, but that they spoke with Kate Bietz at Perkins. [R 128] DHSS stated that Ms. Bietz "made it very clear that Perkins is a residential school that does not accept Medicaid funding." [*Id.*] DHSS concluded that Perkins was not eligible because (1) Perkins "would be perceived, or could be perceived, as an institution or isolating individuals with disabilities from the greater community," [R 4930] and (2) because Perkins would have to first be Medicaid eligible in their own state. [R 128-30, 4925-26]

**L. At the End of Summer 2016, Parents Refuse to Participate in Updating M.G.'s 2016 Draft IEP and 2014 ESER.**

Throughout the summer, the District drafted an administrative ESER and provided it to parents for comment and review. [R 5537-39; 2542-45; 2554-67; 2614-30] Conscious of its "affirmative duty to review and to revise, at least annually, an eligible child's IEP,"[20] which is an independent duty not "contingent on parental cooperation with, or acquiescence in, the state or local educational agency's preferred course of action,"[21] the District still diligently attempted to seek parental participation, via parents' attorney, in the process. Parents initially provided comments but then withdrew from that process on August 24, 2016, stating it "ha[d] become a lower priority for [them]." [R 1190; 5540]

**M. The District Issues a PWN to Parents Outlining Its Objections to Perkins.**

The District outlined its concerns about Perkins in a PWN dated August 11, 2016. Those concerns included that: Perkins rarely transitions student back to their home school districts, it is not

**HOLLAND &
KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

---

[20]     *Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047, 1055 (9th Cir. 2012).
[21]     *Id.*

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    PAGE 17
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*          CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 25 of 59

Medicaid eligible and has no Medicaid oversight, it is the farthest placement from M.G.'s home (and thus certainly not the least restrictive environment for him), and it is unreasonably expensive. [R 3492-93] The District spoke directly with Mr. Underwood at Perkins, who stated that Perkins does not have set services for transition back to the student's home district, does not provide consulting services, and that many students stay at Perkins until they finish their school years. [R 4822-23]

### N. The District Extends Offers of Interim or Alternative Educational Placements to M.G.'s Parents, M.G.'s Parents Reject Every Offer.

Prior to parents filing for due process in this matter, the District made six different offers of interim educational placements for M.G, along with two offers of mediation. The placements included: (1) a May 2016 Extended School Year Service offer for the summer of 2016; [R 2856] (2) an August 2016 offer for educational services by a District Board Certified Behavioral Analyst (BCBA) and BVI/Autism consultant in M.G.'s home; [R 120, 122] (3) another August 2016 offer for "10 hours weekly of homebound services from a district BCBA and BVI teacher during the school weeks of August 22, 2016 and August 29, 2016;" [R 3494] (4) yet another August 2016 offer for interim educational services at West High School; [R 1189] (5) a September 2016 offer to collaborate with parents and ARC of Anchorage program staff to provide Applied Behavioral Analysis (ABA) services to M.G. related to behavior goals, and BVI instruction related to the Orientation and Mobility objectives and BVI supports; [R 3496] (6) an October 2016 offer to have M.G. attend an introductory session to the Alternative Career Education/Adult Community Transition (ACE/ACT) program, designed specifically for him by District consultant Jennifer White. Along with this last offer, the District offered to coordinate with the ARC of Anchorage to provide the same BVI and BCBA supports and services that M.G. was then receiving at home through ARC. [R 1794-95]

Parents rejected each and every one of these offers. [R 4418-19, 1190, 1222, 2891, 4339]

HOLLAND &
KNIGHT LLP
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT          PAGE 18
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*          CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 26 of 59

**O. Parents Issue to the District a 10-Day Notice of Withdrawal of M.G. and Unilateral Placement at Perkins.**

The parties met on October 12, 2016 to discuss possible residential settings for M.G., and ASD made several proposals. [R 4333-34, 4849] Parents testified that after the October 12 meeting they determined they would unilaterally place M.G. at Perkins. [R 4339-40] On October 18 the District received parents' 10-day notice of withdrawal of M.G. [R 1411] On November 2, 2016, Mr. Underwood at Perkins wrote to parents that "[t]here are still no appropriate openings for [M.G.] at this time, but at least we have this commitment from you." [R 3117] Parents confirmed with Perkins "[w]ith rolling admissions, we knew there was no immediate spot [for M.G.] available." [R 3117] This email was not shared with ASD and ASD did not learn until much later that the first opening for M.G. at Perkins was not until May 1, 2017. [R 4970]

**P. The District, Thinking that M.G. Would Leave Anchorage in a Number of Days, Seeks to Evaluate M.G. to Complete His ESER and the Present Levels Portion of His IEP.**

Based on parents' October 18, 2016 letter, the District believed that M.G. would be leaving immediately in ten days. This left ASD little time to evaluate M.G., as is its legal right upon parental notice of unilateral placement.[22] [R 5558-59] On October 25, 2016, the District requested an opportunity to evaluate M.G., which it confirmed in a PWN, and received consent for evaluation from parents on October 26th. [R 1430, 5560-62, 3498-3501, 433-34] The District explained that "[M.G.] has not attended an ASD program since May of 2016. The District seeks evaluation to determine [M.G.]'s current adaptive and behavioral needs as well as an indication of his current assistive technology skill level, his orientation and mobility skill and communication needs in light of the anticipated rapid progression of his blindness." [R 3500] The PWN also provided: "The District rejects placement of [M.G.] without completion of the evaluation to determine his current baseline

**HOLLAND & KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

---

[22]    20 U.S.C. § 1412(a)(10)(C)(iii)(II) and 34 C.F.R § 300.148(d)(2).

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                PAGE 19
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*                CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 27 of 59

prior to his admission to Perkins per Parents' written notice." [*Id.*]

Parents consented to assessment in the areas of adaptive, language communication, behavioral, social, emotional, vocational, assistive technology, sensory processing and orientation and mobility. [R 433-34] The District flew expert Jennifer White to Anchorage to perform parts of the evaluation. [R 5564-65, 5328-29, 440-45] Parents made M.G. available for 5 hours over two days for evaluation, but would not allow any observations in M.G.'s home.[23] [R 440-45]

**Q. Following Five Hours of Evaluation, Parents Refuse the District's Repeated Requests to Finish its Evaluations of M.G.; This Refusal on the Part of Parents Continues to the Present Day.**

Additional assessments had to occur in order to complete M.G.'s ESER and IEP, so the District requested additional evaluation dates on November 6, 2017. [R 1569, 1575, 433-34] The District's counsel followed up with a phone call and then an email on November 15th, enclosing a proposed schedule of evaluation dates to begin on November 17th. [R 1579-81] The email provided, "you'll notice that the proposed schedule expedites this evaluation so the team, parents and counsel, if requested, can meet in mid-December with Consultant Jennifer White to complete a new ESER[.]" [R 1579-89] Attached to the email were invitations for an ESER meeting on December 14, 2016 and an IEP meeting on December 16, 2016. [R 1582-89]

Parents did not respond and the District was forced to cancel the evaluations. [R 1591-1602] ASD requested the opportunity to evaluate M.G. and followed up on this request on multiple dates, including on October 25, 2016, October 26, 2016 November 15, 2016, November 17, 2016, November 18, 2016, November 21, 2016, November 30, 2016, December 1, 2017, December 5, 2017, February 17, 2017 and March 2, 2017. [R 1434-37, 526-27, 156-57, 1579-89, 1604-07, 1612, 1618-21, 1623-25, 1636-39, 1646-50] The District also sought to observe M.G. when he was home in Alaska

**HOLLAND &
KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

---

[23] For ASD's testimony concerning the importance of behavioral testing in a student's natural environment, *see* AR 7420-41 ¶¶ 6, 10, as well as AR 7444 ("Functional Assessment").

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    PAGE 20
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*         CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 28 of 59

in August 2017, during the pendency of this appeal. This due process hearing request was denied by Hearing Officer Tim Seaver on the basis that the request was governed by the underlying due process order and his hands were effectively tied. [AR 7455-60]

### R. The District Investigates Twenty-Five Residential Programs and Extends Four Placement Offers, Parents Reject Every Offer.

Additionally, prior to parents filing for due process, the District made four offers for residential school placement, [R 3496-97, 1785-88, 1794-95, 159-60] and it researched and contacted over twenty-five residential programs. [R 3502, 1809-14] Parents rejected each of these offers.

### S. Parents File For Due Process.

Parents filed their request for due process hearing before DEED on January 17, 2017. [R 6222-25]

### T. The Hearing Officer Issues a Series of Erroneous Pre-Trial Orders.

The matter was assigned to Hearing Officer Sheila Gallagher. She issued a series of pre-trial orders that prohibited ASD from advancing its defense to parents' claims that it failed to implement M.G.'s IEP in a timely manner.

#### 1. The Hearing Officer Erroneously Denies ASD's Motion to Continue Evaluations.

The first such ruling occurred at a pre-trial status conference on March 17, 2017. On March 3, 2017, ASD filed a Motion for Order to Continue Evaluations. [R 5992-6000] Hearing Officer Gallagher denied ASD's motion on the record, with no reasoning provided. [AR 6349] Following ASD's Motion for Reconsideration on the issue, [R 6064-69, 6056-63] the Hearing Officer issued a written order that stated that "[t]he delay and necessity of these additional evaluations has not been sufficiently explained." [R 6075] She determined that there "appears to have been ample opportunity for the district to request and perform the evaluations prior to this latest request." [*Id.*] As explained in further detail below, this ruling was contrary to the IDEA and highly prejudicial to ASD's case.

**HOLLAND & KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT      PAGE 21
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*      CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 29 of 59

Nor would ASD's requested evaluation have caused any delay, as it had arranged for evaluations to commence prior to the scheduled due process hearing.

### 2. The Hearing Officer Prejudices ASD's Defense and Grants Parents' *Motion in Limine* Excluding Jennifer White's Reports and Conclusions.

The second erroneous ruling occurred when parents filed a motion *in limine* on April 7, 2017 to exclude the expert reports of Jennifer White, who had evaluated M.G. in October 2016 for 5 hours. [R 6082-89, 6080-81] Ms. White was the only representative from ASD that the parents had permitted to see or interact with M.G. since they withdraw him from school in May 2016. [R 5952; AR 7160] Parents did not return M.G. to West High School for the 2016-2017 school year, and permitted no further observations or evaluations of M.G. [*Id.*] Parents' motion also moved to "preclude the District from arguing, or taking testimony from Ms. White and any other witnesses who may be called by the Anchorage School District, that M.G. does not need residential placement." [R 6082]

The Hearing Officer addressed parents' motion on the second day of the due process hearing. [R 3927-28] She offered no cogent rationale for her decision to grant parents' motion, stating: "I was just trying to follow a little common sense, because most of the reports -- the two reports referenced were a restatement of things that we have already heard." [R 3954] She struck the "summary and recommendations" portion of Ms. White's reports over the objection of ASD's counsel. [R 3953-54] ASD's counsel requested a written ruling, even one by email, to which the Hearing Officer responded: "Okay. Motion in limine is hereby granted. Yeah. Might add another sentence or two. What else do we have to talk about?" [R 3956]

## V.   PROCEDURAL HISTORY

Parents filed their request for due process hearing before DEED on January 17, 2017. [R 6222-25] The hearing lasted 10 days in April 2017. [R 6232] Hearing Officer Gallagher issued her order on May 30, 2017, [R 6245] then issued an "Appendix 1" to her order on June 3, 2017 [R 6245, 6179-82], in which she took a prior ASD settlement offer to parents and inserted her own edits and

HOLLAND &
KNIGHT LLP
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT          PAGE 22
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*          CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 30 of 59

deletions. [*Compare* 6121-24 *with* 145-54] ASD timely appealed to the Alaska Superior Court on June 30, 2017. [R 6146] Parents removed to this Court on July 12, 2017. [R 6127-30]

## VI. ARGUMENT

ASD advances four principle errors in this appeal. <u>First</u>, the Hearing Officer erred when she concluded that ASD failed to implement M.G.'s IEP in a timely manner. M.G.'s May 2016 IEP was never completed by his IEP team because his parents withdrew from the process and refused to allow evaluations necessary to complete the IEP. When ASD attempted to complete M.G.'s IEP and ESER administratively, parents ultimately refused to participate in the process. When parents told ASD they would unilaterally place M.G. at Perkins in October 2016, ASD sought parental consent to evaluate M.G. pursuant to IDEA procedures. Parents at first consented to evaluations, then after Jennifer White conducted only five hours of observations, refused to permit further evaluations of M.G.

This error informs the <u>second</u> error by the Hearing Officer: the denial of ASD's Motion to Continue Evaluations in March 2017 before the due process hearing. This request by ASD was a full year after the Perkins IEE, three months late for the required triennial update of M.G.'s ESER, and 10 months after M.G. ceased attending West High School. Without updated data and analysis of M.G.'s present level of functioning, and an established baseline from which to measure his progress or regression, the Hearing Officer effectively ensured that ASD could not comply with its obligation to provide M.G. a free appropriate public education as required by law.

<u>Third</u>, because the Hearing Officer had no reliable and updated data or evaluations upon which to judge parents' due process demand to place M.G. at Perkins, the Hearing Officer erred when she excluded the expert reports of Jennifer White. The Hearing Officer compounded this error by excluding Ms. White's opinion testimony based on her October 2016 in-person observations of M.G., that residential private school was inappropriate for an autistic student who was concurrently coping with progressive blindness. The Hearing Officer effectively barred ASD from presenting a defense

**HOLLAND &
KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

Appellant's Memorandum in Support of Motion for Summary Judgment                    Page 23
*Anchorage School District v. M.G. and his parents Betsy and Brian G.*                    Case No. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 31 of 59

to parents' due process complaint that Perkins was the only appropriate placement that could serve M.G.'s needs. ASD could not advance any evidence of its willingness to provide comprehensive services for M.G. in a specially designed program in Anchorage.

Fourth, the Hearing Officer erred when she failed to weigh the legal effect of parents' unilateral placement at Perkins during the pendency of the due process hearing. A school district is required to pay for the program selected by a parent *only* if (1) the educational program recommended by the school district was inadequate or inappropriate, (2) the program selected by the parent was appropriate, and (3) the equities support parents' claim. The Hearing Officer failed entirely to undertake this analysis. Had she applied the law to the facts, the evidence favored ASD on all three prongs.

For any of these four reasons, this Court should reverse.

### A. The Hearing Officer Erred When She Concluded That ASD Failed to Implement M.G.'s May 2016 Draft IEP in a Timely Manner.

Under Alaska law, a school district is not obligated to reimburse parents for private school tuition so long as the district makes FAPE available through an IEP process.[24] The Hearing Officer concluded that parents met their burden to show that ASD "failed to implement [M.G.'s] IEP in a timely manner by not selecting a 'safe and appropriate residential placement.'" [R 6244] But the Hearing Officer erroneously treated M.G.'s May 2016 Draft IEP and its accompanying PWN as a completed IEP over ASD's objection [R 5951, 6056-63; AR 6953-54]. This error permeated the Hearing Officer's handling of the entire case. Reversal on this basis is appropriate because the applicable law demonstrates that ASD made meaningful efforts to provide a FAPE and parents' non-cooperation is the reason no IEP was completed.

**HOLLAND & KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

---

[24]    *See* 4 AAC 52.155(a)(1).

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT      PAGE 24
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*      CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 32 of 59

### 1. A Draft IEP that Fails to Include a Statement of Present Level Functioning and the Selection of Placement Cannot Serve as a Final IEP.

The IEP is "the centerpiece of the statute's education delivery system for disabled children."[25] It is "[t]he modus operandi of the Act."[26] The IEP is the means by which special education and related services are "tailored to the unique needs" of a particular child.[27] An IEP must include a statement of a child's present level functioning (Present Levels).[28] Present Levels "provides a benchmark for measuring the student's progress toward the goals stated in the IEP."[29] To this end, current baseline data must be provided, and such data "must be concise and clearly understandable so that the student's progress can be evaluated."[30] The IDEA also provides that an IEP must state "the anticipated frequency, *location*, and duration of those services and modifications."[31]

In *Ravenswood City Sch. Dist. v. J.S.*, a hearing officer determined that a student's IEP was inadequate because the plan and its goals were not predicated upon clear baselines or Present Level data.[32] The District Court applied Ninth Circuit precedent on the importance of documenting a student's present level of performance with baseline data,[33] and affirmed the determination of the hearing officer concerning the inadequacy of the student's IEP.

In *A.K. ex rel. J.K. v. Alexandria City Sch. Bd.*, the Fourth Circuit rejected an IEP that failed to

---

[25]    *Honig v. Doe*, 484 U.S. 305, 311 (1988).

[26]    *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 368 (1985).

[27]    *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 181 (1982).

[28]    34 C.F.R. § 300.320(a)(1).

[29]    *See Ravenswood City Sch. Dist. v. J.S.*, 870 F. Supp. 2d 780, 790 (N.D. Cal. 2012) (citation omitted).

[30]    *See id.* (citation omitted); *see also* 20 U.S.C. § 1414(c)(2).

[31]    *A.K. ex rel. J.K. v. Alexandria City Sch. Bd.*, 484 F.3d 672, 680 (4th Cir. 2007) (citing 20 U.S.C. § 1414(d)(1)(A)(i)(VII) (emphasis in original) (concluding that IEP that failed to identify a particular school at which it anticipated that a child would be educated failed to provide a FAPE).

[32]    *Ravenswood City Sch. Dist.*, 870 F. Supp. at 790.

[33]    *Id.* (quoting *Settlegoode v. Portland Pub. Schs.*, 371 F.3d 503, 508 n.1 (9th Cir. 2004)).

**HOLLAND &
KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT          PAGE 25
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*          CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 33 of 59

state the location that the child would receive educational services.[34]  The court cited the language of the IDEA itself, which provides that an IEP must state "the projected date for the beginning of the services and modifications … and the anticipated frequency, *location*, and duration of those services and modifications."[35]  The court concluded:  "In light of the fact that the school at which special education services are expected to be provided can determine the appropriateness of an education plan, it stands to reason that it can be a critical element for the IEP to address."[36]

In the present case, when the last IEP team meeting occurred on May 18, 2016, M.G.'s IEP team did not have the Perkins IEE to inform its statement of Present Levels.  The Draft IEP provides: "The team anticipates receiving a comprehensive evaluation with recommendations from the Perkins Institute."  [R 2413]  Given the missing Perkins evaluation, the IEP "Measurable Annual Goals" sections also had no specific "Baseline" accorded to each.  [R 2425-2433]  In their Post-Hearing Brief, parents admitted that M.G.'s IEP was incomplete on that date.  [AR 7026]  It is undisputed that the change in placement to residential in M.G.'s IEP did not name a specific location where M.G. would receive educational services.  [R 2435]

M.G.'s May 18, 2016 Draft IEP could not have served as the basis for a reasoned decision by a Hearing Officer that ASD failed to timely implement an IEP.  Simply put, there was no IEP.  As explained below, the reasons why there was no IEP are justifiable and reasonable.

## 2.  A Prior Written Notice Cannot Serve as a Final IEP.

ASD issued a PWN alongside the Draft May 2016 IEP proposing a change in placement to residential treatment, with the location to be administratively determined.  [R 2436]  ASD issued a

**HOLLAND &
KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK  99501
Phone:  (907) 263-6300
Fax:  (907) 263-6345

---

[34]     *A.K. ex rel. J.K.*, 484 F.3d at 680 (citing 20 U.S.C. § 1414(d)(1)(A)(i)(VII) (emphasis in original) (concluding that IEP that failed to identify a particular school at which it anticipated that a child would be educated failed to provide a FAPE)).
[35]     20 U.S.C. § 1414(d)(1)(A)(i)(VII) (emphasis added).
[36]     *A.K. ex rel. J.K.,* 484 F.3d at 680.

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    PAGE 26
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*          CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 34 of 59

number of PWNs to parents after this May 2016 document outlining its reasons for not implementing a residential placement. [R 3494-3503] A PWN is not an IEP, and should not be interpreted as clarifying or replacing the IEP.

In *M. v. Falmouth School Department*, the hearing officer assumed that the contents of a Prior Written Notice were part of a child's IEP, and erroneously determined that the IEP called for specific curriculum.[37] The parent had filed for due process on the basis that the school district "violated the IEP" by not providing her child with the instruction.[38] On appeal, the court rejected this argument, holding that the IEP, and not the PWN, was the governing document.[39] In reaching this decision, the court reasoned that the IDEA "refers to the IEP as the agreement embodied by the final, formal written document and not, as [parent's] argument implies, any tentative agreement reached by the IEP team."[40] The court explained that "[t]he IEP document differs, for instance, from the [PWN]," which the statute identifies as "a description of the action[s] proposed … by the [school and educational agency]."[41] The PWN "serves to protect parents' rights under the IDEA by enabling them to … later make informed decisions regarding whether to challenge an educational agency's *discretionary choices* in a later due process hearing[.]"[42] The IEP, on the other hand, "is meant to present a clear record of what placements and educational services were offered."[43]

ASD agreed to issue a PWN on May 18, 2016 to propose a change to M.G.'s placement to residential treatment, with the location to be administratively determined. [R 2436] But this PWN was not a completed, signed IEP, and it was error for the Hearing Officer to construe the PWN as

---

[37]     *M. v. Falmouth Sch. Dep't*, 847 F.3d 19, 24-25 (1st Cir. 2017), *cert. denied sub nom. Ms. M. v. Falmouth Sch. Dep't*, No. 16-1440, 2017 WL 2423910 (U.S. Oct. 2, 2017).
[38]     *Id.* at 24.
[39]     *Id.* at 28.
[40]     *Id.*
[41]     *Id.* (internal quotation marks and citations omitted).
[42]     *Id.* (emphasis added) (citations omitted).
[43]     *Id.* (emphasis added) (internal quotation marks and citations omitted).

**HOLLAND & KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT      PAGE 27
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*      CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG    Document 58    Filed 11/06/17    Page 35 of 59

such.  Rather, the Hearing Officer was obligated to consider the totality of events between the May 18, 2016 Draft IEP/PWN and the April 2017 due process hearing.  A careful review of the record demonstrates why ASD could not update, and therefore implement, any IEP for M.G. during the relevant period in question.

### 3.  Parents' Non-Cooperation Precluded Finalization or Implementation of an IEP.

Parents erroneously framed the issue before the Hearing Officer as the IEP team "deciding" on residential treatment, and ASD foot-dragging in violation of the IDEA.  But this put the cart before the horse.  The IDEA provides that the IEP team can only "decide" when it completes a properly constructed IEP, which must:  (1) be based on current, evaluative data; (2) include a statement of Present Levels and annual goals; (3) incorporate any publically funded IEE in deciding how to provide a FAPE; and (4) identify a particular school where a child will be educated, should a change in placement occur.[44]  While there are specific deadlines for completion of an IEP after evaluations are done, a school district is excused from meeting those deadlines when it is attempting in good faith to involve the parents and they refuse to cooperate.[45]  The U.S. Supreme Court has recognized that parents have a statutory right to contribute to the IEP development process, and, when agreement

---

[44]     *See Ravenswood City Sch. Dist. v. J.S.*, 870 F. Supp. 2d 780, 790-91 (N.D. Cal. 2012) (data); 20 U.S.C. §1414(c)(1)-(2) (same); 34 C.F.R. § 300.320(a)(1) (present levels); 34 C.F.R. § 300.320(a)(2)(i) (goals); 34 C.F.R. § 300.502 (IEE); 20 U.S.C. § 1414(c)(1)(A)(i) (review existing IEE); 34 C.F.R. § 300.320(a)(3) (method of measuring progress); 34 C.F.R. § 300.320(a)(7) (location of services); *A.K. ex rel. J.K. v. Alexandria City Sch. Bd.*, 484 F.3d 672, 680 (4th Cir. 2007) (same); 20 U.S.C. § 1414(d)(1)(A)(i)(VII) (same).

[45]     *Jackson v. Chicago Pub. Sch., No. 15 C 6990*, 2017 WL 2559036, at *3 (N.D. Ill. June 13, 2017) (reasoning that § 1414(b)(1) of the IDEA "gives parents of a child the right to examine all records and to participate in all meetings with respect to the development of an IEP.  This amounts to a statutory mandate that the parents be given the opportunity to be consulted and to participate in the development of an IEP.  It would be inconsistent with this statutory mandate to penalize the Board because it was unable to complete the IEP within the 60-day deadline because it went out of its way to include the Plaintiff in the development of her child's IEP.  The IHO's decision that the delay was excusable is supported by a preponderance of the evidence.").

**HOLLAND & KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax:  (907) 263-6345

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT          PAGE 28
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*          CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 36 of 59

cannot be reached on the document, to file for a due process hearing.[46] But parents' statutory right to contribute does not mean parents can prematurely withdraw from the process, fail to cooperate with the district in effectuating what the IDEA requires, and then file for due process on the basis that the district is not "implementing" a premature document that does not comport with the IDEA. "Predetermination violates the IDEA because the Act requires that the placement be based on the IEP, and not vice versa."[47]

Despite ASD's reasonable and good faith efforts, M.G. did not have a current IEP at the time parents contend the May 2016 decision was supposedly made by his IEP team. [R 117, 125, 133, 2412-36] Parents confirmed in their briefing that M.G.'s IEP remained in draft form. [AR 7026] It was error for the Hearing Officer to conclude that ASD failed to "implement" a draft IEP document that ASD made good faith efforts to finalize in cooperation with parents in the months leading up to parents filing for due process.

As set forth in the statement of facts, *supra*, there was no final IEP because Perkins did not timely provide the IEE and then parents did not cooperate. First, parents in January 2016 requested that ASD pay for an IEE to be conducted at Perkins. ASD sidestepped its normal evaluative process and consented to this IEE based upon the misleading representations by parent's counsel that parents were not seeking residential placement. Second, the IEE took place in March 2016 to accommodate parents' schedule. The IEP team was scheduled to meet in April 2016, but was informed by parents that the IEE would not be ready until early May 2016. The IDEA requires that a public funded IEE must be considered by a school district in *any* decision made with respect to the provision of FAPE to the child.[48] As a matter of law, ASD could not act to update the IEP without the IEE.

**HOLLAND & KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

---

[46]     *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 519-20 (2007).
[47]     *K.D. ex rel. C.L. v. Dep't of Educ., Hawaii*, 665 F.3d 1110, 1123 (9th Cir. 2011) (citation omitted).
[48]     34 C.F.R. § 300.502(c)(1) ("If the parent obtains an independent educational evaluation at public expense … the results of the evaluation … [m]ust be considered by the public agency, if it

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT      PAGE 29
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*      CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG    Document 58    Filed 11/06/17    Page 37 of 59

**B. The Hearing Officer Erred by Barring ASD from Updating M.G.'s ESER and IEP with Present-Level Baseline Data to Determine His Current Adaptive and Behavioral Needs.**

The Hearing Officer's error in treating the May 18, 2016 Draft IEP and PWN as a final IEP was followed by her next error: the failure to appreciate the legal significance of parents' non-cooperation when ASD sought to complete evaluations and finalize M.G.'s IEP in the summer of 2016.[49] The Hearing Officer's analysis can be boiled down to three points: (1) a May 2016 Draft IEP and PWN recommended residential placement; (2) at the time of the hearing M.G. had not yet been placed in a residential setting; therefore (3) parents were reasonable in unilaterally placing M.G. at Perkins. These conclusions are not supported by the facts and fail to consider the legal consequences of a parent's refusal to allow evaluations and to cooperate in consideration of options for placement.

Courts around the country have recognized that "[p]ermitting parents to bypass the evaluation process and then subsequently seek payment for private school costs would violate the IDEA."[50]

---

meets agency criteria, in any decision made with respect to the provision of FAPE to the child[.]" ); 20 U.S.C. § 1414(c)(1)(A)(i) ("As part of … any reevaluation under this section, the IEP Team and other qualified professionals, as appropriate, shall … review existing evaluation data on the child, including--evaluations and information provided by the parents of the child[.]").

[49]      *Patricia P. v. Bd. of Educ. of Oak Park*, 203 F.3d 462, 468 (7th Cir. 2000) (reasoning that a school district needs parents' cooperation to evaluate and fulfill its duties under the IDEA); *Jackson v. Chicago Pub. Sch., No. 15 C 6990*, 2017 WL 2559036, at *3 (N.D. Ill. June 13, 2017) (holding that delay in finalizing IEP is excusable when district is seeking parental involvement).

[50]      *Murphy v. Town of Wallingford*, No. 3:10-CV-278 CFD, 2011 WL 1106234, at *5 (D. Conn. Mar. 23, 2011); *P.S. v. Brookfield Bd. of Educ.*, 353 F. Supp. 2d 306, 315-16 (D. Conn.), *aff'd sub nom. P.S. ex rel. J.S. v. Brookfield Bd. of Educ.*, 186 F. App'x 79 (2d Cir. 2006) (reasoning that a parent may not refuse consent to an evaluation because they are concerned that a school district's witness will not be impartial and will make recommendations parents do not like); *Johnson by Johnson v. Duneland Sch. Corp.*, 92 F.3d 554, 558 (7th Cir. 1996) ("[B]ecause the school is required to provide the child with an education, it ought to have the right to conduct its own evaluation of the student and the school cannot be forced to rely solely on an independent evaluation conducted at the parents' behest." (citing *Gregory K. v. Longview School Dist.*, 811 F.2d 1307, 1315 (9th Cir. 1987) ("If the parents want [the student] to receive special education under the Act, they are obliged to permit such testing."))); *Great Valley Sch. Dist. v. Douglas M.*, 807 A.2d 315, 321 (Pa. Commw. Ct. 2002) ("Federal courts have uniformly held that in the absence of a violation of the IDEA, a unilateral private placement that interferes with a school district's ability to evaluate a child imposes no burdens on the school district." (citing cases in support)).

**HOLLAND &**
**KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

"[W]here a school district articulates reasonable grounds for its necessity to conduct a … reevaluation of a student, a lack of parental consent will not bar it from doing so."[51]  Parents are, of course "free to decline special education under IDEA rather than submit to [a district] evaluation."[52]  "[T]he IDEA's requirements for gathering information during an evaluation and using the evaluation's results are pointless when parents refuse consent [and] privately educate the child;" in this case, they have effectively "waive[d] all benefits under the IDEA."[53]

In *Patricia P. v. Bd. of Educ. of Oak Park*,[54] the court held that parents forfeited their claim of reimbursement following a unilateral private placement because they did not "allow a school district a reasonable opportunity to evaluate their disabled child."[55]  In evaluating the merits of parents' lack of cooperation in effectuating the evaluation, the court reasoned:

> The IDEA's preference for a cooperative placement process … serves a practical purpose. Without some minimal cooperation, a school district cannot conduct an evaluation of a disabled child as is contemplated under the IDEA … Further, a school district is required to reevaluate a child every three years to assess the progress or regress of a child's disability. … Indeed, [i]f a student's parents want him to receive special education under the IDEA, **they must allow the school itself to reevaluate the student and they cannot force the school to rely solely on an independent evaluation**. … Practically speaking, a school board needs the cooperation of the parent(s) to properly evaluate a child and convene a case conference to thereby determine what level of services would address the child's disability.[56]

As in the Seventh Circuit, Alaska law requires that a child's ESER must be updated at least once every three years,[57] or if the district "determines that the educational or related services needs …

---

51    *Shelby ex rel. Kathleen T v. Conroe Indep. Sch. Dist.*, 454 F.3d 450, 454 (5th Cir. 2006).
52    *Id.; cf. Gregory K.*, 811 F.2d at 1315; *see also Durkee v. Livonia Cent. Sch. Dist.*, 487 F. Supp. 2d 313, 316 (W.D.N.Y. 2007) ("While the IDEA provides that the school district may seek authority to conduct an evaluation over the objection of a parent or guardian, the Act explicitly recognizes that a parent or guardian is free to refuse any publicly-funded special education services offered by the district." (citing 20 U.S.C. § 1414(a)(1)(D)(ii)(II))).
53    *Fitzgerald v. Camdenton R-III Sch. Dist.*, 439 F.3d 773, 776 (8th Cir. 2006).
54    *Patricia P. v. Bd. of Educ. of Oak Park*, 203 F.3d 462 (7th Cir. 2000).
55    *Id.* at 469.
56    *Id.* at 468 (internal quotation marks and citations omitted).
57    4 AAC 52.180(a); 34 C.F.R. § 300.303(b)(2).

HOLLAND &
KNIGHT LLP
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT          PAGE 31
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*          CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 39 of 59

of the child warrant a reevaluation."[58]   A reevaluation is warranted when a child's circumstances change,[59] such as here, where M.G. was experiencing progressive vision loss.[60]   In Alaska, the evaluation of a child requires parental consent.[61] ASD could not complete the ESER and IEP without the parents' consent and cooperation.

As recognized by the court in *Patricia P. v. Bd. of Educ. of Oak Park*, the IDEA has special provisions allowing a school district to conduct evaluations when a parent seeks to unilaterally remove his or her child to private school.[62] Section 1412(a)(10)(C)(iii)(II), which was added to the IDEA in 1997 to "clar[ify] the circumstances in which parents who unilaterally remove their children from private school may receive tuition reimbursement,"[63] provides the cost of reimbursement for private school tuition "may be reduced or denied" if, prior to the parents' removal of the child from the public school, the public agency informed the parents "of its intent to evaluate the child (including a statement of the purpose of the evaluation that was appropriate and reasonable), but the parents did not make the child available for such evaluation[.]"  The purpose of 20 U.S.C. § 1412(a)(10)(C)(iii)(II) is to "giv[e] the school system an opportunity, before the child is removed, to assemble a team, evaluate the child, devise an appropriate plan, and determine whether a [FAPE] can be provided in the public schools."[64]  This purpose cannot be effectuated when parents refuse to consent to an evaluation of their son.

---

[58]     34 C.F.R. § 300.303(a)(1).
[59]     4 AAC 52.180(b)(2)(D).
[60]     *See* 4 AAC 52.130(i)(l),(o).
[61]     4 AAC 52.115 ("Not later than 90 calendar days *after obtaining parental consent* for an initial evaluation or reevaluation of eligibility, the district shall evaluate the referred child, develop an IEP if the child is determined to be eligible *and parental consent for services is obtained*, and provide the child with special education and related services.") (emphasis added).
[62]     20 U.S.C. § 1412(a)(10)(C)(iii); *see Dep't of Educ., State of Haw. v. M.F. ex rel. R.F.*, 840 F. Supp. 2d 1214, 1232-33 (D. Haw. 2011) ("*M.F. ex rel. R.F.*").
[63]     *Ms. M. v. Portland Sch. Comm.*, 360 F.3d 267, 271 (1st Cir. 2004) (citing Pub. L. No. 105–17, 111 Stat. 37 (1997)).
[64]     *See M.F. ex rel. R.F.*, 840 F. Supp. 2d at 1232-33.

**HOLLAND &**
**KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone:  (907) 263-6300
Fax:  (907) 263-6345

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    PAGE 32
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*           CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 40 of 59

The Hearing Officer simply failed to consider this entire body of applicable law. Even though she acknowledged the parents' lack of cooperation in allowing evaluations, [R 6075] the Hearing Officer failed to address or apply the case law establishing either the family's general obligation to cooperate, or the more specific right of a school district to conduct evaluations upon notice of parents' intent to unilaterally place in private school. These errors require reversal.

   1. **The Hearing Officer Erroneously Denied ASD's Pre-Trial Motion to Continue Evaluations on the Basis That ASD's Evaluations Will Delay M.G.'s Confirmed May 1, 2017 Start Date at Perkins.**

In light of a school district's clear legal right to conduct evaluations, the Hearing Officer should have, at a minimum, granted ASD's motion to allow evaluations in advance of the due process hearing. This would have allowed ASD to provide testimony about M.G.'s current level of function and to make appropriate recommendations to the Hearing Officer about an in-district placement option based on current and informed data. The Hearing Officer denied this request based on concern about possible delay, even though she noted that the mother's reluctance to allow additional evaluations was "troubling." [R 6075] Denying evaluations out of concern for delay was factually erroneous. ASD had submitted a schedule of evaluations and proposed to complete them by March 28, 2017, so as not to push back the April 13 hearing start date. [AR 6344-45]

The pre-hearing error barring ASD from completing its evaluations was compounded when the Hearing Officer referred to it in reaching her ultimate decision that ASD failed to timely implement M.G.'s IEP. She concluded:

> ASD has had multiple opportunities to evaluate student prior to the fall of 2016 and immediately prior to the hearing. They had not evaluated him after their own staff found that he had failed a vision test in March 2015. They did not even inform parents so that they could have had him evaluated. They did not do an evaluation of student after they were supplied with the report of Dr. Arnold although Ms. Ackerman did from August 2016 to April of 2017 a running evaluation of student although she did not inform parents of what she found until[]the IEP meeting in spring of 2016. The IEP team did not suggest or request additional evaluations prior to the recommendation of the residential placement. [R 6244]

**HOLLAND & KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    PAGE 33
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*          CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 41 of 59

These findings by the Hearing Officer are inconsistent with the record and the applicable law.

### a. ASD Did Not Have "Multiple Opportunities" to Evaluate M.G. from March 2015 to December 2015.

The Hearing Officer appeared to conclude that because ASD "should" have evaluated M.G. in March 2015, it was not entitled to evaluate him prior to the hearing in March 2017. This conclusion was not supported by any law or fact. ASD's March 2015 distance vision test did not trigger ASD's obligation to evaluate M.G. Second, Ms. Ackerman did a functional vision assessment of M.G. and was in regular contact with M.G.'s parents during this period. [R 5421-22, 5441-42, 2350, 5429, 2374, 2337-42] The adequacy of this evaluation was not the subject of the due process hearing.[65] Third, Ms. Ackerman attempted to meet with M.G.'s parents in January 2016 to discuss the results of her assessment, but M.G.'s mother declined to meet and asked to wait until the IEP meeting in April. [R 5443, 2346] This was days before DLC requested that ASD pay for an IEE at Perkins and months after mother first contacted Perkins to commence M.G.'s admissions process there. [R 3162-69, 1923, 104-07] Parents commenced M.G.'s enrollment at Perkins while concurrently delaying meeting with Ms. Ackerman to review the results of ASD's assessment.

ASD acknowledged that it should have provided parents with M.G.'s March 2015 distance vision screening test that revealed that he was likely nearsighted. Notably, however, this "failed" vision test did not, as the Hearing Officer remembered, "show[] that student had *significant problems* with his distance vision in both his eyes." [R 6235] Within a few weeks of this test, M.G.'s parents took him to see his pediatric ophthalmologist twice, and Dr. Arnold found there was nothing wrong with M.G., or that he had an eye infection. [R 4032, 4043-44, 1934-36 (mother's timeline provided to Perkins)] On August 20, 2015, parents provided ASD with Dr. Arnold's records indicating he was

**HOLLAND &**
**KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

---

[65] *See* 20 U.S.C. § 1415(f)(3)(B) ("The party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in the notice…").

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT        PAGE 34
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*        CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 42 of 59

making a preliminary diagnosis of retinitis pigmentosa. [R 2006] ASD then immediately acted upon duty to evaluate M.G. in the area of visual impairment. Jose Pabon directed Ms. Ackerman to commence an evaluation the same day. [R 2359]

It was error for the Hearing Officer to seemingly fault ASD for not conducting an earlier evaluation. Even if it should have conducted an earlier evaluation, the Hearing Officer had no logical reason for precluding evaluations in advance of the due process hearing, especially if she had the authority to fashion and circumscribe them, and the evaluations would not cause delay. Instead, the Hearing Officer's error ensured an incomplete and inaccurate record.

### b. Following the Request for the Perkins IEE, ASD was Legally Obligated to Review the IEE and Consider its Contents Before Proceeding.

To the degree that the Hearing Officer faulted ASD for not evaluating M.G. between January and May 2016, she erred by not acknowledging the timing of the Perkins IEE. The IEE occurred in March 2016, but was not delivered to ASD until after the last IEP team meeting on May 18, 2016. Once the Perkins IEE had been requested, ASD was legally obligated to consider it.[66] Faulting ASD for not seeking to evaluate M.G. during this period made no factual or legal sense.

### c. Following the May 2016 IEP Team Meeting, ASD Attempted to Work With Parents to Administratively Update M.G.'s ESER and IEP, Until Parents Refused to Participate in August 2016.

In concluding that ASD had ample earlier opportunities to evaluate M.G., the Hearing Officer also ignored the events of the summer of 2016. ASD was acutely aware of its responsibility to finalize the IEP following the final May 18, 2016 IEP team meeting. On June 8, 2016, District consultant

---

[66]     34 C.F.R. § 300.502(c)(1) ("If the parent obtains an independent educational evaluation at public expense … the results of the evaluation … [m]ust be considered by the public agency, if it meets agency criteria, in any decision made with respect to the provision of FAPE to the child[.]" ); 20 U.S.C. § 1414(c)(1)(A)(i) ("As part of … any reevaluation under this section, the IEP Team and other qualified professionals, as appropriate, shall … review existing evaluation data on the child, including--evaluations and information provided by the parents of the child[.]")

**HOLLAND &**
**KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    PAGE 35
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*          CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 43 of 59

Eudora Fraczek informed DLC and parents that M.G.'s 2016 Draft IEP and 2014 ESER were out of date, that the Draft IEP did not provide a true baseline for M.G.'s Present Levels, and that there were discrepancies between what she observed in the private provider records and the Perkins IEE. [R 6056-57 ¶¶ 4(a), (d), (e), 5; R 6059 ¶ 10] During the June 8 meeting, Ms. Fraczek personally requested an updated evaluation using the ABLLS assessment tool. This tool was recommended by the Perkins January 2016 evaluation. Parents declined this evaluation. [R 6057-58 ¶¶ 6-7] Ms. Fraczek requested that the parties work collaboratively to administratively update M.G.'s ESER and IEP over the summer, while M.G. was out of school. Parents agreed to participate in this process. Then in August, parents reversed course and withdrew from this process, precluding completion of the ESER. [R 6057-58 ¶¶ 5, 8]

> ## 2. Events Subsequent to the Due Process Hearing Confirm that ASD Has Been Denied the Opportunity to Evaluate M.G. for Years.

As it argued before the Hearing Officer in its pre-trial motion and through testimony at the due process hearing, ASD could not force parents to consent to District observations or evaluations.[67] Without any complete observational or evaluative data on M.G. since January 2016, it was impossible for ASD to complete the IEP and provide a FAPE during the period prior to parents filing for due process. These errors fundamentally impacted the Hearing Officer's determination of the merits of this dispute.

Subsequent to the due process hearing, ASD continued its efforts to observe and evaluate M.G., in compliance with its obligations under the IDEA, and pursuant to Hearing Officer Gallagher's order. As explained below, it cannot do so for reasons beyond its control. This is important because the Ninth Circuit has affirmed the denial of private school tuition reimbursement where there was

**HOLLAND &
KNIGHT LLP**

420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

---

[67]     34 C.F.R. § 300.300(c)(1)(i) ("([E]ach public agency … Must obtain informed parental consent, … prior to conducting any reevaluation of a child with a disability.").

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT          PAGE 36
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*          CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 44 of 59

"evidence in the record that both the private school and [parents] hindered the development of the child's [IEP] through their uncooperativeness with public school officials."[68]

The Hearing Officer included a settlement offer ASD made to parents as a document she labeled "Appendix 1" to her order. [R 6121-24] The Hearing Officer crossed out items in the offer and inserted new dates, and then retyped the Appendix and included it with an updated order that she circulated to the parties on June 7, 2017. [R 145-154 (offer), 6121-24 (final circulated appendix)] The Appendix ordered that:

> Parents agree to an evaluation to be conducted at Perkins beginning October 1, 2017, which shall be considered in the development of an IEP for student for the 2017-2018 school year. The evaluation will primarily use data from the IEP implementation by Perkins staff and detailed observations conducted by the ASD evaluation team described below. The ASD shall select an evaluation team … [t]he ASD will share the credentials of the evaluators with parents however selection is solely within the discretion of the ASD. … Any additional evaluations required for a reevaluation will be completed by ASD personnel unless ASD determines Perkins person[nel] can provide the evaluation[.] [R 6121]

ASD filed for due process in early August 2017 on the basis that parents would not consent to its request to observe M.G. while he was home from Perkins in August so that it could properly identify, select, and assemble an evaluation team prior to October 1, 2017. [AR 7159-63] ASD had not observed, interacted with, or evaluated M.G. since the five hours of evaluation in October 2016. [AR 7160] ASD raised concerns about Perkins implementing M.G.'s draft IEP based on the order. ASD needed parent cooperation to implement the order. [AR 7162] After motion practice between the parties, Hearing Officer Tim Seaver denied ASD's Motion to Compel Observations and denied its due process request, reasoning that:

> I agree with the general proposition that IDEA grants School District's substantial discretion, subject to various procedural obligations, to conduct observation and evaluations of students receiving special education services at the School District's expense. However, once a hearing officer issues an order, it is beyond dispute that a subsequent hearing officer

**HOLLAND &**
**KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

---

[68]    *M.N. v. Hawaii*, 2013 WL 601816, *1 (9th Cir. 2013) (unpublished decision cited pursuant to Ninth Circuit Rule 36-3).

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    PAGE 37
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*          CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 45 of 59

has no authority to question or modify that order. The proper avenue for challenging decisions by a hearing officer is appeal to either state or federal court. [AR 7457]

Following Hearing Officer Seaver's order confirming that ASD could not observe or evaluate M.G. prior to October 1, 2017, ASD proceeded in good faith to prepare a team of evaluators to travel to Perkins to conduct these ordered evaluations. [AR 7483-7503] As explained in ASD representative Laura Allen's supplemental affidavit, ASD spent months collaboratively planning this evaluation trip in phone calls and meetings involving ASD personnel, parents, and Perkins. [AR 7481-7492 ¶¶ 1-20; AR 7514-88 (email log); AR 7589-10307 (emails)] This included a team meeting with 25 participants. [AR 7485 ¶ 11; 7508-11]

On October 18th, just hours before the ASD evaluation team members were scheduled to fly to Massachusetts, ASD received notice that Perkins would not allow the evaluations to proceed. [AR 7512, 7492-99 ¶¶ 20-23] ASD immediately issued a Prior Written Notice to M.G.'s parents to inform them of Perkins' decision to cancel the evaluations and to request that the parents intervene with Perkins to allow the evaluations to proceed as scheduled. [AR 7492 ¶ 21] Parents never responded to this request. [AR 7492 ¶ 22] ASD lost thousands of dollars in airfare and hotel room charges due to Perkins' inexplicable last minute refusal. [AR 7499-7501] This conduct by Perkins follows a pattern of years of refusal by parents to cooperate in evaluations. As a consequence, ASD has not been able to comply with Hearing Officer Gallagher's order to conduct evaluations.

The IDEA provides that parents' unreasonable conduct may weigh into a court's equitable analysis of the reasonableness of a total reimbursement request in a unilateral placement.[69] Hearing Officer Gallagher's failure to observe legal authority or properly weigh parents' uncooperative behavior has created a difficult situation where ASD has effectively been precluded from even observing M.G. at his private school placement.

HOLLAND &
KNIGHT LLP
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

---

[69]     20 U.S.C. § 1412(a)(10)(C)(iii)(III).

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT        PAGE 38
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*        CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 46 of 59

IDEA case law relieves a school district of its obligation to provide a FAPE where a parent will not provide consent to evaluation.[70] The Hearing Officer's order should be reversed because parents prevented ASD from conducting evaluations, thus ensuring that ASD could not complete M.G.'s ESER or IEP and provide him a FAPE. This resulted in the Hearing Officer's award of placement at one of the most expensive residential private schools in the country, premised on parents: (1) "agree[ing] to an evaluation to be conducted at Perkins beginning on October 1, 2017," with a team of ASD evaluators [R 6121] and (2) "agree[ing] to collaborate with Perkins and the District to agree upon a time, date, and duration" of the observations and evaluations. [R 6124] Neither of these things have taken place. Parents consistently and undeniably do not wish ASD involvement in the evaluating, and thus educating, of their son, yet they seek public funds for his education.

### C. The Hearing Officer Erred When She Prevented ASD from Presenting Expert Testimony that It Could Provide for M.G.'s Educational Needs in an Individually-Designed In-District Placement.

Hearing Officer Gallagher further erred and prejudiced ASD's defense when she granted parents' pre-trial motion *in limine* preventing ASD expert witness Jennifer White from testifying (1) that residential private school was not appropriate for M.G.'s progressive blindness and coping mechanisms given his autism diagnosis; and (2) that ASD could provide for M.G.'s educational needs in an in-district placement housed in ASD's adult program Alternative Career Education/Adult Community Transition (ACE/ACT).

The ability to call witnesses and present evidence is a basic hallmark of due process. Section 1415(h)(2) of the IDEA provides that "[a]ny party to a [due process] hearing … shall be accorded … the right to present evidence and confront, cross-examine, and compel the attendance of witnesses[.]"

**HOLLAND &
KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

---

[70] *Great Valley Sch. Dist. v. Douglas M.*, 807 A.2d 315, 321 (Pa. Commw. Ct. 2002) ("Federal courts have uniformly held that in the absence of a violation of the IDEA, a unilateral private placement that interferes with a school district's ability to evaluate a child imposes no burdens on the school district." (citing cases in support)).

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT          PAGE 39
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*          CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 47 of 59

Alaska regulation allows exclusion of evidence at a due process hearing only where it is not relevant, privileged, where there was a failure to disclose five days prior to the hearing, where the evidence relates to issues not in the complaint, or where the evidence causes delay, is a waste of time, or is cumulative.[71] In the IDEA context, California district courts have recognized that because the Federal Rules of Evidence do not apply in administrative hearings,[72] "unless it is unduly repetitious, all relevant testimony should be admitted."[73] It is appropriate for a hearing officer to "consider[] the opinions of [a party's] expert witnesses, and explained why she did not rely on them in rendering a determination."[74] In an administrative hearing where the rules of evidence are relaxed, it is inexplicable why the Hearing Officer would exclude a party's expert without providing a reasoned basis upon which to justify such an extreme decision.

Hearing Officer Gallagher offered no cogent rationale for her decision to grant parents' motion *in limine* excluding Ms. White's reports. ASD's counsel requested a written ruling, even one by email, to which the Hearing Officer responded: "Okay. Motion in limine is hereby granted. Yeah. Might add another sentence or two. What else do we have to talk about?" [R 3956] She never issued a written ruling.

At the hearing, Ms. White began to address her observation and evaluation of M.G., [R 5320] and the Hearing Officer clarified that ASD was "going to ask questions … [and] if [DLC] want[ed] to object, you can object and … I'll say whether or not I agree with you or not." [R 5322-23] The Hearing Officer recalled, "what [DLC] objected to and I agreed with your objection, was [Ms. White's] conclusion[s], which was only the last two paragraphs of that one report … [a]nd then it came down

HOLLAND &
KNIGHT LLP
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

---

[71]    *See* 4 AAC 52.550(i).
[72]    *K.S. ex rel. P.S. v. Fremont Unified Sch. Dist.*, 679 F. Supp. 2d 1046, 1059 (N.D. Cal. 2009), *aff'd sub nom. K.S. v. Fremont Unified Sch. Dist.*, 426 F. App'x 536 (9th Cir. 2011) (citation omitted).
[73]    *Glendale Unified Sch. Dist. v. Almasi*, 122 F. Supp. 2d 1093, 1102 (C.D. Cal. 2000).
[74]    *See, e.g., Smith v. D.C.*, 2014 WL 1425737, at *10 (D.D.C. Mar. 14, 2014).

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    PAGE 40
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*          CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 48 of 59

to all or nothing, so I just excluded all of them." [R 5326]

The Hearing Officer's exclusion of portions of Ms. White's expert reports was highly prejudicial to the outcome of this case. For example, the order concluded: "[The choice] then came down to Maryland and Perkins, the District's other options not included because per previous discussion, they were not acceptable to the parents and they did not fit within the IEP direction of a residential program and did not fully address student's needs." [R 6242]

Leaving aside the issue of whether M.G. had a current IEP, if the issue was whether ASD failed to timely implement M.G.'s IEP, ASD should have been permitted to explain that it did not "timely implement" the IEP because it concluded, based on information learned subsequent to the Perkins IEE, that residential placement was no longer appropriate for M.G. Ms. White's expert testimony provided that M.G.'s educational needs could be served in an in-district placement housed in ASD's adult program ACE/ACT. [R 859-60; 445-47; 5285-87; AR 7151-58] This was a much less restrictive option, comporting with the IDEA requirement that children should be mainstreamed wherever possible.[75] This testimony could have resulted in a different placement decision, or, at the very least, provided durable contrary evidence to support the Hearing Officer's ultimate determination that Perkins was the *only* appropriate placement for M.G.[76] Ms. White's reports and testimony demonstrated the highly capable skill set of educational resources available to ASD to provide an in-

---

[75] 4 AAC 52.170(a) ("A child with a disability must be placed in the least restrictive environment that can provide a FAPE for the child[.]"); 34 C.F.R. § 300.114(a)(2)(i) ("Each public agency must ensure that … To the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are nondisabled[.]").

[76] *See* 4 AAC 52.150(b) ("[A]ny out-of-district placement shall be determined in the following priority order: (1) first, to the in-state placement option that provides the most practicable access from the district; (2) second, to whatever in-state placement is available; and (3) out-of-state placement *only if no in-state placement is available* that can provide a FAPE for the child."); 34 C.F.R. § 300.116(b)(3) ("In determining the educational placement of a child with a disability … each public agency must ensure that … The child's placement … Is as close as possible to the child's home[.]").

**HOLLAND & KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT        PAGE 41
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*        CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 49 of 59

district program for M.G.

### 1. Ms. White Predicts that M.G. Will Regress and Engage in Self-Injurious Behaviors If Placed in Residential Private School, She is Correct.

Ms. White's predictions concerning M.G.'s difficulty in transitioning across environments has proven true, as explained by ASD representative Chris Sturm in his supplemental affidavit. [AR 7467-80] The excluded "summary and recommendations" section at the end of Ms. White's November 2016 report stated:

> Moving [M.G.] to another state to receive this programming while he is already making such enormous adjustments, is worrisome. In my professional opinion it would be markedly more beneficial to bring services to his hometown. … Previous evaluations state that [M.G.] does not generalize information well across environments. How will learning skills at Perkins translate into an ability to use these skills once back home? … During the two day period of observation, there was only one outburst of distress. Now that he is beginning to acclimate and adjust his strategies, a move would most likely trigger a series of spiked behavior again. [R 445-46; *see also* AR 7153-55 ¶ 5, 7-12]

ASD representative Chris Sturm, a Board Certified Behavioral Analyst who had previously worked with M.G. starting in June 2015, reviewed the limited data thus far provided by Perkins [AR 8895-98] and concluded the following:

> With respect to how often tantrums occur, Perkins data from July (the most comprehensive data set for analysis) indicates an average of just over 6 tantrums per week for M.G. … Another concern from the graphed data is how long M.G.'s incidents of challenging behaviors have been. … When incidents occurred, the range of total daily duration was from 7 minutes to 120 minutes. There are 26 days of documented tantrums. Of these days, M.G. had tantrummed longer than 10 minutes on 23 days. [AR 7474 ¶¶ 23-24; *see also* AR 7470-77 ¶¶ 11-30]

Mr. Sturm also concluded that M.G.'s eye-poking was "a re-emergence of a challenging behavior that by all indications had been extinguished," and was of concern to Mr. Sturm, "because of the impact it could have with M.G.'s already deteriorating vision." [AR 7474-75 ¶ 25]

### 2. Ms. White Concludes that Residential Private School Will Not Serve M.G.'s Educational Needs Given the Difficulty with Transition, She is Correct.

Ms. White's March 2017 report of the various residential private schools she visited also concluded with her "summary and recommendations," [R 858-859] which were struck by the Hearing

**HOLLAND & KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
PAGE 42
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*
CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 50 of 59

Officer. [R 3953-54, 5326] ASD reintroduced these conclusions via a supplemental affidavit to this Court. [AR 7156 ¶ 14] Notable among Ms. White's conclusions was the following:

> Administration and teaching staff [at residential private schools] consistently acknowledge challenges to passing on skills and implementation of recommended strategies when students relocate back home. … In this consultant['s] [earlier November 2016 report] the following points continue to support the expert opinion to stay within the Anchorage School District and work with Maryland or Perkins Schools as consultants to design a program for [a] student[] with vision loss and autism[.] … [M.G.] will need to depend on his remaining vision to help build visual maps/visual memory of his community, work sites, communication systems, etc. which he can rely on as his vision may decrease. [R 859-60]

The importance of the transitional component cannot be overstated, in light of recent events that have called the credibility of Perkins' testimony on this subject into question.

### D. Post-Hearing, Parents and Perkins Refuse ASD Access to M.G. and Refuse to Cooperate with the Hearing Officer's Order.

At the hearing, Perkins reassured the Hearing Officer that it used the same curriculum that ASD recommended and that ASD uses, which would have permitted sharing across platforms between Perkins and ASD and eased M.G.'s transition back to ASD. [R 3703, 3850, 4303-04, 4979-80, 5178, 5606-07 (same)] Senior administrators at Perkins, Michele Engelbrecht and Patrick McCall, testified that Perkins uses the Unique Learning System (ULS). [R 3850, 3703] Perkins admitted to ASD after the hearing that it does not, in fact, use ULS for M.G. [AR 7502 ¶ 25(b); AR 7554 (second 9/13/17 email from M. Engelbrecht to L. Allen)] Perkins testified that they were uniquely committed to cooperating with M.G.'s school district and transitioning M.G. back to his home environment; that they shared information with the sending district; and that they viewed the relationship as a "two-way street." [R 3724] Perkins also testified that they allow school districts from out of state to visit Perkins "all the time." [R 3726]

In her order, the Hearing Officer found that: "[Perkins] cooperate[s] with the sending school district and … they would 'relish' maintaining contact with the student's local school district." [R 6241] On this basis, the Hearing Officer found: "Perkins by the preponderance of the evidence

**HOLLAND & KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT    PAGE 43
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*    CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG    Document 58    Filed 11/06/17    Page 51 of 59

presented will help [M.G.] transit[ion] back to his home environment." [R 6243] Hearing Officer Gallagher also concluded, "It is my hope that the parents, Perkins staff and ASD staff and their consultants can and will before February 17, 2018 collaborate on the evaluation of student to determine if he is ready to return to ASD or would benefit from increased time at Perkins." [R 6244-45]

Unfortunately, events subsequent to the hearing reveal that parents and Perkins do not intend to cooperate with ASD, even as to meeting the express requirements of the Hearing Officer's order, [AR 7481-7503] Perkins does not keep or share sufficient data in support of progress reports; [AR 7522 (first 6/28/17 email); AR 7529 (7/3/17 email), AR 7533 (first 7/17/17 email)] it does not view the relationship with sending district as a "two-way street," but as one of suspicion; [AR 7512-13] and it has interfered with ASD's long-planned evaluation trip to Perkins. [AR 7481-7501] In fact, ASD, Perkins and parents engaged in a multi-month process to prepare for ASD's team to conduct evaluations at Perkins in October, as specifically required by the Hearing Officer's order, only to have Perkins announce the day that ASD was leaving to fly to Boston (with nonrefundable fares and hotel rooms purchased with public funds) that Perkins would deny access to its school. [AR 7492 ¶¶ 20-21; 7499-7501 ¶ 24] ASD requested that parents intervene. Parents never responded. [AR 7492 ¶ 22]

Had Ms. White's competing testimony been allowed, the Hearing Officer would at least have a fully developed record upon which to ultimately conclude that Perkins "will help M.G. transition back to his home environment." Without Ms. White's reports and testimony, the record tells only one side of the story. ASD had no viable defense to parents' claim that Perkins was the only appropriate placement in the country. The Hearing Officer's exclusion of ASD's expert testimony was prejudicial and erroneous.

**HOLLAND &
KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT          PAGE 44
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*          CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 52 of 59

**E. The Hearing Officer Erred When She Framed the Issue to be Decided at the Hearing as "Is Perkins An Appropriate Placement?" as Opposed to Reviewing Applicable Case Law When Parents Make a Unilateral Placement.**

Hearing Officer Gallagher failed to weigh the legal effect of parents' unilateral placement at Perkins during the pendency of the underlying due process hearing. She failed to apply controlling case law and failed to undertake a reasoned analysis of parents' unilateral placement decision. Instead, the Hearing Officer framed the case as determining whether parents' choice school was an appropriate educational placement. This error alone requires reversal.

Parents who are dissatisfied with a school district's recommendations for their child for a given school year may unilaterally place their child in a private school and then seek retroactive tuition reimbursement from the local school district.[77] However, parents who choose this path "do so at their own financial risk."[78] A school district is required to pay for a parent-selected program only if (1) the educational program recommended by the school district was inadequate or inappropriate, (2) the program selected by the parent was appropriate, such that the private program meets the student's unique special education needs, and (3) the equities support the parent's claim. These three prongs comprise the *Burlington/Carter* test.[79] The Hearing Officer never applied this test.

In addressing Prong I of the *Burlington/Carter* test—whether the school district offered the student an appropriate program for a given school year—a hearing officer is to consider two sub-factors: (1) whether the student's IEP was developed according to the IDEA's procedural requirements, and (2) whether the educational plan set forth in the IEP was reasonably calculated to confer educational benefit on the student.[80] In addition, the IDEA requires that disabled students be

---

[77]    20 U.S.C. § 1412(a)(10)(C).

[78]    *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993) (internal quotation marks omitted) (quoting *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 373-74 (1985)).

[79]    *See, e.g., Carter*, 510 U.S. at 12-16; *Burlington*, 471 U.S. at 369-371.

[80]    *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 206-07 (1982).

**HOLLAND &
KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT          PAGE 45
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*          CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 53 of 59

educated in the least restrictive environment possible, meaning that "to the maximum extent appropriate, children with disabilities … are [to be] educated with children who are not disabled."[81]

Prong II of the *Burlington/Carter* test concerns the appropriateness of a parental placement, but it need not be reached if the threshold question—namely, whether the school district's program was appropriate—is answered in the affirmative.[82]  If a reviewing agency or court does reach Prong II, review focuses on whether the parents have satisfied their burden of proving that the private school's program was reasonably calculated to confer educational benefit on the student.[83]

Prong III of the *Burlington/Carter* test requires a Hearing Officer to weigh equitable considerations.[84]  The IDEA provides that a request for tuition reimbursement for a unilaterally chosen private school may be reduced or denied either "where prior to the parents' removal of the child from the public school, the public agency informed the parents … of its intent to evaluate the child … but the parents did not make the child available for such evaluation;" or "upon a judicial finding of unreasonableness with respect to actions taken by the parents."[85]  "In considering the equities, courts should generally presume that public-school officials are properly performing their obligations under [the] IDEA."[86]  Accordingly, parents bear the burden of establishing that the equities favor reimbursement.[87]  Courts have "uniformly held" that relief under the IDEA is inappropriate

---

[81]    20 U.S.C. § 1412(a)(5)(A); 34 C.F.R. § 300.114(a)(2)(i); *see also* 4 AAC 52.170(a).

[82]    *See, e.g.*, *M.C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 66 (2d Cir. 2000).

[83]    *Rowley*, 457 U.S. at 207.

[84]    *Burlington*, 471 U.S. at 370-71; *Carter*, 510 U.S. at 15-16.

[85]    20 U.S.C. § 1412(a)(10)(C)(iii)(II)-(III).

[86]    *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 247 (2009); *cf. Doug C. v. Hawaii Dep't of Educ.*, 720 F.3d 1038, 1046 (9th Cir. 2013) ("[W]e hold that the agency must make a reasonable determination of which course of action promotes the purposes of the IDEA and is least likely to result in the denial of a FAPE.  In reviewing an agency's action in such a scenario, we will allow the agency reasonable latitude in making that determination.").

[87]    *Forest Grove*, 557 U.S. at 247 (citing *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 62 (2005) (holding that the burden of proof in an administrative hearing where a party is challenging an IEP is properly placed upon the party seeking relief)); *Carmel Cent. Sch. Dist. v. V.P. ex rel. G.P.*, 373 F. Supp. 2d 402, 417 (S.D.N.Y. 2005), *aff'd sub nom. Carmel Cent. Sch. Dist. v. V.P.*, 192 F. App'x 62 (2d Cir. 2006)

HOLLAND &
KNIGHT LLP
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    PAGE 46
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*        CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 54 of 59

when parents do not cooperate with school officials to find an appropriate public school placement for a child.[88]  A parent's unilateral enrollment of a child in a private school prior to engaging with the school district can evince a lack of genuine interest in a public placement, which, when coupled with a lack of cooperation with the school district, makes tuition reimbursement for unilateral private school placement inappropriate.[89]  The Ninth Circuit expressly permits a reduction from full tuition reimbursement if a program provides services beyond required educational needs, some things that do not meet educational needs at all (such as purely recreational options), "or if [the program] is overpriced."[90]

## 1.  The Hearing Officer Failed to Analyze Prong I of *Burlington/Carter*.

Here, a review of M.G.'s Draft IEP at the time of the due process hearing would have revealed that it was not complete.  There was no basis for the Hearing Officer to determine "whether the educational plan set forth in the IEP was reasonably calculated to confer educational benefit on the

---

("[T]he parents have not sustained their burden of proving that equitable considerations favor their claim."); *cf. R.L. v. Miami-Dade Cty. Sch. Bd.*, 757 F.3d 1173, 1192 (11th Cir. 2014) ("When the parents reject the state's attempt to fulfill th[e] responsibility [of identifying adequate alternative placements], they take the burden of providing an education to their child upon themselves.").

[88]      *Carmel*, 373 F. Supp. 2d at 417-18 (denying tuition reimbursement to plaintiffs based on their failure to cooperate with the school district in devising an appropriate public school placement); *MM ex rel. DM v. Sch. Dist. of Greenville Cty.*, 303 F.3d 523, 535 (4th Cir. 2002) ("It is significant that there is no evidence that [the child]'s parents would have accepted any FAPE offered by the District that did not include reimbursement for [parents' chosen] program. As we have noted, the District is not obligated by the IDEA to provide a disabled child with an optimal education; it is only obliged to provide a FAPE.").

[89]      *See, e.g., C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 840 (2d Cir. 2014); *J.P. ex rel. D.P. v. New York City Dep't of Educ.*, 2012 WL 359977, at *13-14 (E.D.N.Y. Feb. 2, 2012) (reasoning that equitable consideration of parents' lack of good faith, including failure to notify IEP team that parents had already signed a contract and made a nonrefundable deposit at the private placement, weighed against tuition reimbursement); *Thies v. New York City Bd. of Educ.*, 2008 WL 344728, at *4 (S.D.N.Y. Feb. 4, 2008) (concluding that parents did not sustain their burden of proving that equitable considerations favor their claim of tuition reimbursement, because they selected a private school "without first fulfilling their obligation to work together with school officials to find a placement that was appropriate," thus demonstrating "that they did not seriously intend to enroll [their child] in public school" (internal citations omitted)).

[90]      *C.B. ex rel. Baquerizo v. Garden Grove Unified Sch. Dist.*, 635 F.3d 1155, 1160 (9th Cir. 2011).

**HOLLAND &
KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    PAGE 47
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*          CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 55 of 59

student."[91]  ASD was not permitted to offer testimony, via Jennifer White, concerning its less restrictive ACE/ACT program as an alternative to Perkins.

### 2. The Hearing Officer Failed to Analyze Prong II of *Burlington/Carter*.

The Hearing Officer undertook no analysis concerning whether parents satisfied their burden to prove that the Perkins program was "reasonably calculated to confer educational benefit"[92] on M.G.

### 3. The Hearing Officer Failed to Analyze Prong III of *Burlington/Carter*.

The Hearing Officer undertook no analysis of the equitable considerations in this case weighing against tuition reimbursement.  The order provided:

> The ASD has argued that parents' request if granted be at least reduced because of the ASD's position that the parents thwarted any efforts to find a reasonable alternative to Perkins.  I did not see and do not find any evidence of that by parents.  Student's mother was tireless in her efforts to get information about opportunities for her son.  She shared her information with ASD staff, at least until she was directed to refer everything to ASD's lawyer.  [R 6243]

First, the parents bear the burden of establishing that the equities favor reimbursement, not the other way around.[93]  Second, this analysis completely ignored the argument advanced by ASD that 20 U.S.C. § 1412(a)(10)(C)(iii)(II) and 34 C.F.R. 300.148(d)(2) provided that parents' denial of ASD's request to evaluate would subject them to tuition reduction or outright denial.  [R 5997]  Parents denied ASD's request to complete its October 2016 evaluations.  The Hearing Officer was required to consider this in fashioning an award.[94]  Third, while well-reasoned findings must be accorded deference by this Court, here, the Hearing Officer made contradictory findings on parents' non-

---

[91]     *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 206-07 (1982).

[92]     *Id.*

[93]     *Forest Grove*, 557 U.S. at 247; *Carmel Cent. Sch. Dist. v. V.P. ex rel. G.P.*, 373 F. Supp. 2d 402, 417 (S.D.N.Y. 2005), *aff'd sub nom. Carmel Cent. Sch. Dist. v. V.P.*, 192 F. App'x 62 (2d Cir. 2006).

[94]     *Cf. T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 167 (2d Cir. 2014) (concluding that a district court that fails to reach all prongs of the Burlington/Carter test must have the judgment remanded to consider the remaining prongs in the first instance).

**HOLLAND &**
**KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT          PAGE 48
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*     CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 56 of 59

cooperation, acknowledging that mother's reluctance to allow ASD's evaluations was "troubling," [R 6075] later recognizing that "parents had become firmly entrenched in their belief that Perkins was the only placement that could help their son," [R 6238] but then concluding that she did not "find any evidence" of parents' attempts to thwart ASD's efforts to find a reasonable alternative. [R 6243]

The record plainly establishes that parents were only going to agree to Perkins and would not consider any alternative, and they were less than forthright about their intentions. [R 1923-40, 1998-2002, 3105-69] This is precisely the behavior that the IDEA and case law directs a hearing officer to consider when weighing the equities and reducing or denying reimbursement.[95]

Finally, the Hearing Officer selected Perkins over other residential schools because Perkins was a "seven day residential facility" [R 6242-43] and she concluded that she could not "in good conscience send a student with [M.G.]'s disabilities to a school that does not provide [this] safety net." [R 6243] While a laudable goal, the Hearing Officer was obligated to make a finding that a seven-day a week residential facility bore some connection to M.G.'s required *educational* needs and provided him *educational* benefit and that the absence of such a facility would affect his *educational* progress.[96] Perkins

---

[95]     20 U.S.C. § 1412(a)(10)(C)(iii)(III) ("The cost of reimbursement … [for private placement] may be reduced or denied … upon a judicial finding of unreasonableness with respect to actions taken by the parents."); *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 840 (2d Cir. 2014); *Patricia P. v. Bd. of Educ. of Oak Park*, 203 F.3d 462, 468 (7th Cir. 2000); *Tucker v. Calloway County Bd. of Educ.*, 136 F.3d 495 (6th Cir. 1998); *Schoenfeld v. Parkway Sch. Dist.*, 138 F.3d 379 (7th Cir. 1998); *J.P. ex rel. D.P. v. New York City Dep't of Educ.*, 2012 WL 359977, at *13-14 (E.D.N.Y. Feb. 2, 2012); *Thies v. New York City Bd. of Educ.*, 2008 WL 344728, at *4 (S.D.N.Y. Feb. 4, 2008); *L.K. v. Bd. of Educ.*, 113 F. Supp. 2d 856 (W.D.N.C. 2000); *Catlin v. Sobol*, 988 F. Supp. 85 (N.D.N.Y. 1997).

[96]     *See San Rafael Elementary Sch. Dist. v. California Special Educ. Hearing Office*, 482 F. Supp. 2d 1152, 1160-62 (N.D. Cal. 2007) (reasoning that parents' laudable goal to assist autistic student to generalize across environments in 24-hour residential private school did not comport with the IDEA's requirements to support performance within the *academic setting*; concluding that "not every need of a particular child is the legal responsibility of the District") (emphasis added); *see also Matthews by Matthews v. Davis*, 742 F.2d 825, 830 (4th Cir. 1984) ("Under *Rowley* the school system's obligation is to provide personalized instruction with sufficient support services to enable [a student] to benefit educationally … If the school system can supply an appropriate education in a day-only program, further enhancement is not required.").

**HOLLAND &
KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    PAGE 49
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*          CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 57 of 59

provides "services beyond required educational needs, [and] some things that do not meet educational needs at all (such as purely recreational options)"[97] in classes titled "Swim" and "Seat Weaving."  [AR 9313-14]  Because the Hearing Officer failed to consider these things, this Court should review the *Burlington* factors de novo.[98]

### 4.  The Effect of Stay Put on This Case.

Under the IDEA's stay-put provision, a child is supposed to stay in his current placement until a due process hearing is resolved.[99]  Parents violated this provision by unilaterally placing M.G. at Perkins during the hearing.  Now, ASD expects that parents will claim stay-put requires M.G. to stay at Perkins, perhaps even beyond the specific February 18, 2018 end date set by the Hearing Officer's order.  This is a complex issue that could generate separate litigation.  For this reason, both parties will benefit from this Court's resolution of this dispute before the expiration of the current tuition reimbursement obligation on February 18, 2018.

## VII.  CONCLUSION

For the foregoing reasons, this Court should reverse.  ASD made meaningful efforts to provide FAPE, and parents were not justified in unilaterally placing their child at one of the most expensive private schools in the country without first cooperating with ASD to finalize an IEP and complete necessary evaluations.

---

[97]    *C.B. ex rel. Baquerizo v. Garden Grove Unified Sch. Dist.*, 635 F.3d 1155, 1160 (9th Cir. 2011).

[98]    *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369 (1985) (reasoning that the reimbursement statute of the IDEA directs the court to "grant such relief as [it] determines is appropriate[];" further concluding that "[t]he ordinary meaning of these words confers broad discretion *on the court*" (emphasis added)).

[99]    The "stay put" provision of the IDEA requires that a child stay in his or her last agreed upon educational *placement* during the pendency of any administrative or judicial proceedings, unless the educational agency and the parents agree on an alternative placement. 20 U.S.C. § 1415(j); 34 C.F.R. § 300.518(a).  As no agreement was reached on residential placement for M.G. given his incomplete IEP, ASD asserts that his last agreed upon placement was a life skills classroom at ASD.

**HOLLAND & KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone:  (907) 263-6300
Fax:  (907) 263-6345

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    PAGE 50
*ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.*            CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG   Document 58   Filed 11/06/17   Page 58 of 59

DATED at Anchorage, Alaska this 6th day of November, 2017.

HOLLAND & KNIGHT LLP
Attorneys for Appellant

By: _s/Matthew Singer_
    Matthew Singer
    Alaska Bar No. 9911072
    matt.singer@hklaw.com

By: _s/Jessica M. Brown_
    Jessica M. Brown
    Alaska Bar No. 1405030
    jessica.brown@hklaw.com
    420 L Street, Suite 400
    Anchorage, AK 99501
    Tel: (907) 263-6300
    Facsimile: (907) 263-6345

DAVIS WRIGHT TREMAINE LLP
Co-Counsel for Appellants

By: _s/Gregory S. Fisher_
    Gregory S. Fisher
    Alaska Bar No. 9111084
    gregoryfisher@dwt.com
    188 West Northern Lights Blvd, Suite 1100
    Anchorage, AK 99503
    Tel: (907) 257-5335
    Fax: (907) 257-5399

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2017, a true and correct copy of the foregoing document was served via the Court's CM/ECF electronic service on the following counsel of record:

Jacob C. Kammermeyer
Mark W. Regan
Disability Law Center of Alaska
jkammermeyer@dlcak.org
mregan@dlcak.org

Gregory S. Fisher
Patrick Callahan
Davis Wright Tremaine LLP
gregoryfisher@dwt.com
patrickcallahan@dwt.com

Danielle M. Ryman
Jared Gardner
Perkins Coie LLP
DRyman@perkinscoie.com
JGardner@perkinscoie.com

_s/Matthew Singer_

**HOLLAND &
KNIGHT LLP**
420 L Street, Suite 400
Anchorage, AK 99501
Phone: (907) 263-6300
Fax: (907) 263-6345

APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT      PAGE 51
ANCHORAGE SCHOOL DISTRICT V. M.G. AND HIS PARENTS BETSY AND BRIAN G.      CASE NO. 3:17-00157-SLG

Case 3:17-cv-00157-SLG    Document 58    Filed 11/06/17    Page 59 of 59